Reginald JOHNSON *v.* STATE of Arkansas

CR 95-1227                                924 S.W.2d 233

Supreme Court of Arkansas
Opinion delivered June 10, 1996

*Tell Hulett*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Reginald Johnson appeals from an order denying his motion for a new trial on grounds of ineffective assistance of counsel. He urges two points in support of his appeal: (1) trial counsel was ineffective in failing to call witnesses to impeach the testimony of a primary state witness, Charlie Farmer; and (2) trial counsel prejudiced his case by failing to communicate plea options to him. We hold that the appeal is meritless, and we affirm.

Reginald Johnson was charged with first-degree murder in connection with the shooting death of Bruce Hatchett on February 15, 1994, in North Little Rock. The State produced the following testimony: Barbie J. Oliver testified that on the night Bruce Hatchett was killed, two men came to her house looking for him. (She later identified one of the men as Johnson, and she positively identified him at trial.) Johnson asked if Hatchett was there. When Oliver replied that he was not, Johnson retorted that she was lying because he had just seen Hatchett run to the back of the house with his (Johnson's) stereo.[1] Additional words were exchanged, and Johnson pulled his pistol out and threatened to kill Hatchett.

Derrick Jackson, Johnson's cousin, testified that he was the unidentified man with Johnson at Oliver's house. He essentially confirmed the testimony of Barbie Oliver but added that Hatchett was present at Oliver's house. Johnson asked Hatchett for his things, and Hatchett claimed that he did not have anything belonging to Johnson. Words and threats were exchanged. Jackson testified that Johnson became upset and pulled his gun out and put it in Hatchett's face. Jackson grabbed Johnson and told him that they should leave.

Johnson and he left the Oliver house and went to the house of Johnson's aunt. Fifteen to thirty minutes later, Hatchett appeared. Jackson testified that Hatchett entered the room and headed straight for Johnson. Hatchett got close to Johnson, and more words were exchanged. Johnson pushed Hatchett away twice and then shot him several times. Jackson added that a couple of the shots were fired after Hatchett had fallen to the floor.

---

[1] The testimony of witnesses is in conflict on whether it was a stereo set or a television set.

Melissa Steele, Johnson's cousin, testified that the shooting occurred at her former residence in North Little Rock. She testified that Hatchett, a large man, came to the house that night and immediately confronted Johnson. Although she never saw a gun, she stated that Hatchett walked in with his hand behind his back. She testified that Hatchett would not let up and forced Johnson against the wall. Suddenly, Johnson pushed Hatchett off and began shooting him. Steele testified that after Hatchett was shot, he fell to the ground.

Charlie Farmer, Barbie Oliver's son, testified that he was with Hatchett on the night he was slain and that Hatchett did not have a weapon. Farmer stated that he followed Hatchett into the house where the shooting occurred and was a few steps behind him when he heard a shot and saw Hatchett hit the floor. He then saw Johnson and a "shadow of a weapon." When he saw Hatchett lying on the floor, he was leaving the house and heard two more shots. He added that someone began shooting at him as he headed for the car.

Lisa Sakevicious, a criminalist with the State Crime Lab, testified that she conducted a gunshot residue examination on the victim's clothing. She testified that several of the shots were fired at close range. Dr. Frank Peretti, the associate Medical Examiner for the State Crime Laboratory, testified that Hatchett died of multiple gunshot wounds: one to the chest, three to the abdomen, one to the back, and one to the left thigh.

Johnson mounted a defense of self-defense with the following testimony. LaShonda Hatchett, an 11-year-old girl, testified that she saw Hatchett come into the house and begin to shout and push Johnson. She said that Hatchett kept reaching into his back pocket as if he was trying to retrieve something. On cross-examination, she admitted that she saw Johnson shoot Hatchett while he was lying on the floor and that she never actually saw Hatchett with a pistol.

Craig Howard testified that Hatchett came in and began shouting and pushing Johnson. He stated that Johnson kept telling Hatchett to leave him alone and was trying to get away from him but that Hatchett would not stop. He testified that Hatchett was a large man and that it was his impression that Hatchett was going to hurt Johnson.

Johnson testified on his own behalf. He stated that on the afternoon of the murder, he went to Barbie Oliver's house and saw

Hatchett grab his television set and run with it. A verbal altercation followed. Hatchett pushed Johnson, and Johnson ultimately pointed his pistol at Hatchett. He then went to his aunt's house. According to Johnson, Hatchett arrived later at Johnson's aunt's house. He stated that Hatchett walked in and started pushing him, and Johnson began shooting. He stated that he thought Hatchett was going to hurt him because he (Johnson) had pointed a gun at him earlier, and Hatchett had threatened him. He also stated that Hatchett had a reputation for violence. The State asked Johnson if he continued to shoot Hatchett after he had fallen to the floor. Johnson answered that he did not. However, on cross-examination Johnson stated that he did not know whether Hatchett was standing the entire time that he was firing the bullets because he had closed his eyes.

The jury convicted Johnson of first-degree murder and sentenced him to sixty years in prison. After judgment was entered, Johnson filed a motion for a new trial, asserting that his trial counsel, James Massie, had failed to call essential witnesses who could have impeached the testimony of a crucial state witness, Charlie Farmer. Johnson further asserted that he would have accepted a negotiated plea if one had been offered and that the possibility of seeking a negotiated plea was never communicated to him by counsel. Massie testified that he thought he recalled hearing something about 25 years from the prosecutor, but no plea offer was made. He broached reducing the charge to manslaughter to the prosecutor, but nothing was resolved. He stated that he prepared a case of self-defense and believed that the 11-year-old girl, Lashonda Hatchett, was his most credible witness. The motion for a new trial was denied by the trial court.

■ Johnson appeals the denial of his new trial motion. Although Rule 37 generally provides the procedure for postconviction relief due to ineffective counsel, this court has recognized that the issue may be raised by a defendant on direct appeal after the issue is first raised during trial or in a motion for a new trial. *See* Ark. R. Crim. P. 37; *Missildine v. State*, 314 Ark. 500, 863 S.W.2d 813 (1993); *Tisdale v. State*, 311 Ark. 220, 843 S.W.2d 803 (1992); *Hilliard v. State*, 259 Ark. 81, 531 S.W.2d 463 (1976).

■■ The criteria for assessing the effectiveness of counsel were enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides that when a convicted defendant complains of ineffective assistance of counsel, he must show that counsel's repre-

sentation fell below an objective standard of reasonableness, and that but for counsel's errors, there is a reasonable probability that the jury would have decided differently. *See also Missildine* v. *State, supra.* Judicial review of counsel's performance must be highly deferential, and a fair assessment of counsel's performance under *Strickland* requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from counsel's perspective at the time. A reviewing court must indulge a strong presumption that the conduct falls within the wide range of reasonable professional assistance. Finally, a court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence that was placed before the jury. *Missildine* v. *State, supra; Cox* v. *State,* 313 Ark. 184, 853 S.W.2d 266 (1993); *Burnett* v. *State,* 310 Ark. 202, 832 S.W.2d 848 (1992).

■ Johnson first maintains that his trial counsel was remiss in not calling essential witnesses to impeach the testimony of Charlie Farmer. This court has stated that counsel must use his own best judgment to determine which witnesses will be beneficial to his client. *Huls* v. *State,* 301 Ark. 572, 785 S.W.2d 467 (1990); *Tackett* v. *State,* 284 Ark. 211, 680 S.W.2d 696 (1984). When assessing an attorney's decision not to call a particular witness, it must be taken into account that the decision is largely a matter of professional judgment which experienced advocates could endlessly debate, and the fact that there was a witness or witnesses that could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness. *Huls* v. *State, supra; Dumond* v. *State,* 294 Ark. 379, 743 S.W.2d 779 (1988).

In the case at hand, Johnson specifically contends that his trial counsel was ineffective for failing to rebut the testimony of Farmer, who testified that he was in the house at the time of the shooting and suggested that he saw Johnson shoot Hatchett while Hatchett was lying on the floor. A review of the record, however, reveals that Farmer never testified precisely that Johnson shot Hatchett when he was down. He testified, instead, that he heard a shot and that Hatchett fell to the floor. He was leaving the house when he heard two more shots fired.

Johnson contends, nonetheless, as he did at the new-trial hearing that his trial counsel should have called Toni Hatchett, Tina Steele, and Derrick Jackson as defense witnesses to cast doubt on

Farmer's testimony that he ·was in the room at the time of the shooting. However, both Hatchett and Steele testified at the hearing on the motion for new trial that they left the room when the fight between Johnson and Hatchett began. Hatchett added that she closed the door after Hatchett came in and that no one entered after him. She did not see Farmer in the house. Jackson testified that he was in the room during the shooting and did not see Farmer until he (Jackson) was leaving the house. The trial court concluded on this point that even if Farmer's testimony was thrown out, there was ample testimony from other witnesses of the shooting and what transpired between Johnson and Hatchett. We agree. At least three other witnesses described what transpired, as has been already noted in this opinion.

Johnson further contends that these witnesses would have undercut Farmer's suggestion that Johnson shot Hatchett while he was down. Again, it is unclear that that was Farmer's testimony. But, in addition, witnesses other than Charlie Farmer testified that Johnson shot Hatchett while he was on the floor. For example, Derrick Jackson testified, "I think maybe one or two [shots] may have went in him after he hit the floor." LaShonda Hatchett also testified on cross-examination that she saw Johnson shoot Hatchett while he was on the floor. Thus, even if trial counsel had called witnesses to impeach Farmer's assumed prejudicial statement about shooting Hatchett while he was on the floor, there was other independent testimony to that effect.

■ We view these circumstances as categorically different from those in *Wicoff* v. *State*, 321 Ark. 97, 900 S.W.2d 187 (1995), where trial counsel failed to call the defendant's grandmother on behalf of the defendant. There, the grandmother would have testified that the alleged rape victim, who was the defendant's 11-year-old stepdaughter, told her she had fabricated her story. We held, under those circumstances, that a new trial was warranted. Here, the testimony of Charlie Farmer, whether he was present at the scene or not, added little to the State's case. In sum, we fail to glean any significant prejudice from the failure to impeach Farmer either on his whereabouts or concerning what he saw.

■ Finally, Johnson contends on appeal that James Massie called a witness on Johnson's behalf, Craig Howard, who Massie believed was not telling the "whole truth." This argument, however, was not made to the trial court and, therefore, was not

preserved for appeal. *See Roberts* v. *State*, 324 Ark. 68, 919 S.W.2d 192 (1996).

■■   Johnson's remaining point is that trial counsel failed to inform him about specific plea negotiations. This court has stated that "[t]he decision on whether to enter into plea negotiations is a matter of strategy beyond the purview of postconviction relief." *Jones* v. *State*, 308 Ark. 555, 559, 826 S.W.2d 233, 235 (1992); *see also Lomax* v. *State*, 285 Ark. 440, 688 S.W.2d 283 (1985). Furthermore, trial counsel testified at the new trial hearing that though he thought he remembered hearing something about 25 years from the prosecutor, the State never made a plea offer to him on Johnson's case. Thus, there was no basis for communicating a plea offer to Johnson. Tamika Hrobowski, the Deputy Prosecuting Attorney handling this case, confirmed that she made no plea offer. There is, too, the fact that Johnson himself remained resolute throughout his trial that he did not think that he was guilty of first- or second-degree murder because he was acting in self defense. When asked by the trial court if he would lie to the court and say that he did something that he did not do in order to get a lighter sentence, he answered, "No." Based on these facts, Johnson has failed to show that the trial court's ruling was clearly erroneous on this point.

Affirmed.

DUDLEY, J., not participating.