Phillip Todd CHENOWITH *v*. STATE of Arkansas

CR 98-1475 19 S.W.3d 612

Supreme Court of Arkansas
Opinion delivered June 22, 2000
[Petition for rehearing denied September 21, 2000.]

724

*Morris W. Thompson,* Judge;

Sexton & Fields, PLLC, by: Sam Sexton III, for appellant.

*Mark Pryor,* Att'y Gen., by: *Todd L. Newton,* Ass't Att'y Gen., for appellee.

PER CURIAM. Phillip Todd Chenowith was convicted of multiple counts of kidnapping and rape, and one count of aggravated robbery in connection with criminal episodes involving prostitutes that occurred on March 15, 1993, and March 30, 1993. He received life sentences for the rape convictions and terms of years for the other offenses. This court affirmed his conviction and sentence in *Chenowith v. State,* 321 Ark. 522, 905 S.W.2d 838 (1995). Chenowith subsequently filed a timely petition for postconviction relief in which he alleged that his trial counsel was ineffective for failing to move for a dismissal because of a violation of the speedy-trial rule, and for failing to introduce the testimony of Chenowith and several alibi witnesses. The circuit court denied relief, and Chenowith now appeals that order. We find no error and affirm.

To prevail on a claim of ineffective assistance of counsel, the petitioner must show first that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. Second, the petitioner must show that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must show there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. In making a determination on a claim of ineffectiveness, the totality of the

evidence before the judge or jury must be considered. *Strickland v. Washington*, 466 U.S. 668 (1984).

The following dates and periods of time are relevant to the speedy-trial issue:

| | | |
|---|---|---|
| *March 30, 1993* | — | Date of arrest |
| *August 30, 1993-September 24, 1993* | — | First period found excludable by the circuit court as a continuance that was granted to Chenowith. |
| *September 25, 1993-January 18, 1994* | — | Second period found excludable by the court as a continuance granted to the State to obtain material evidence. |
| *January 18, 1994-May 4, 1994* | — | Third period found by the circuit court to be excludable because of congestion of the trial docket. |
| *August 17, 1994* | — | Date Chenowith was tried. |

■ The speedy-trial period began on the date of Chenowith's arrest. Ark. R. Cr. P. 28.2(2)(a). The number of days that passed between the date of his arrest and the date of his trial totaled 505 days. Accordingly, if Chenowith's counsel had moved for a dismissal, he would have made a *prima facie* showing of a violation of the rule, and the burden would have shifted to the State to show good cause for the delay. *Jones v. State*, 329 Ark. 603, 951 S.W.2d 308 (1997). Whether or not counsel was ineffective, therefore, would depend on whether the State would have been able to prove there would have been excluded periods sufficient to bring Chenowith's trial within the speedy-trial period. In making this determination,

we must apply the version of Rules 28.1 through 28.3 that was in effect at the time of Chenowith's trial.

*August 30, 1993-September 24, 1993 (25 days)*

The circuit court first concluded that the period from August 30, 1993, to September 24, 1993, could be excluded pursuant to Rule 28.3(c), which provides that "the period of delay resulting from a continuance granted at the request of defendant or his counsel..." shall be excluded in computing the time for trial. The court found that a continuance was granted until October 6, 1993, but that the period chargeable to Chenowith was limited to September 24, 1993, because on that date, the State sought a continuance in order to allow for DNA testing.

■ There is no indication in the criminal docket that Chenowith was granted a continuance on August 30. While this is contrary to Rule 28.3(i), which requires that "(a)ll excluded periods shall be set forth by the court in a written order or docket entry," this court has also held that it will uphold excluded periods without a written order or docket entry when the record itself demonstrates the delays were attributable to the accused and where the reasons were memorialized in the proceedings at the time of the occurrence. *Goston v. State,* 326 Ark. 106, 930 S.W.2d (1996).

■ The State argues that other documents in the record support the circuit court's finding that Chenowith requested a continuance. The first of these is a trial notice that indicates that the trial has been "reset by attorney" to October 6, 1993. The other document is a computer printout that indicates the trial was "reset at the request of the defendant." The computer printout also indicates that on August 30, 1993, the cases against Chenowith and his codefendant, David Harder, were severed for trial. Chenowith subsequently received a trial notice for October 6, 1993. Under these circumstances, it appears that Chenowith requested the continuance until that date. The circuit court correctly concluded that this period could be excluded pursuant to Rule 28.3(c).

*September 25, 1993-January 18, 1994 (116 days)*

The next period excluded by the circuit court was September 25-January 18, 1994, when the State sought a continuance in order to obtain DNA testing. The circuit court concluded that this period

could be excluded pursuant to Rule 28.3(d)(1), which provides that a continuance granted at the request of the prosecuting attorney shall be excluded in computing the time for trial if the "continuance is granted because of the unavailability of evidence material to the state's case, when due diligence has been exercised to obtain such evidence and there is reasonable grounds to believe that such evidence will be available at a later date."

The continuance was granted during a hearing that took place on September 24, 1993. At that time, the State alleged that DNA testing was necessary only as to one of Chenowith's alleged victims. Although there was a discussion about whether the prosecutor and defense counsel would jointly move for the continuance, Chenowith's attorney, at the conclusion of the hearing, stated unequivocally that it was not a joint motion. After it was clear that it was not a joint motion, the prosecutor then stated, "(T)his is on the State's motion and therefore speedy trial will not be tolled on it." The events that occurred during the hearing were described by the trial court in the following docket entry:

*9/24/93 — D appd w/ atty. State's motion to do DNA testing granted.*

The next hearing regarding the DNA evidence occurred on December 20, 1993. At that time, the prosecutor informed the court that her office learned from the FBI that "testing was still in progress." The prosecutor then requested more time in order for the DNA tests to be completed. The trial court granted the State's request. The docket entry that pertains to this hearing reads:

*12/20/93 — D app'd w/atty. report reset.*

The last hearing that involved the DNA evidence occurred on January 18, 1994. During that hearing, the prosecutor informed the court that the FBI could not complete the DNA tests because "there was not enough DNA submitted to complete a full DNA analysis." The State then requested that the case be set for trial. The case was then set to begin on May 4, 1994. The events of this hearing were recorded in the following docket entry:

*1/18/94 — D app'd w/atty. FBI unable to do DNA testing.*

In his brief, Chenowith contends that the circuit court was clearly erroneous when it excluded the time period between September 24, 1993, and January 18, 1994. First, he points to the prosecutor's statement at the close of the hearing on September 24, when she declared that the period should not be excluded, and the trial court's apparent agreement with that statement. Chenowith also suggests that the fact that the DNA tests were never completed indicates a lack of due diligence on the part of the State.

■ The ability of the State to use this period to overcome a motion for dismissal does not depend on the statements of the prosecutor at the close of the hearing, but rather, on its ability to prove the criteria in Rule 28.3(d)(1): (1) the evidence sought is material to the State's case; (2) the State has exercised due diligence to obtain the evidence; and (3) there are reasonable grounds to believe that such evidence will be available at a later date. The tests were no doubt sought by the State in order to establish a genetic link between Chenowith and the samples that were collected in the rape kit that was performed on one of the victims. The materiality of that evidence is demonstrated by the fact that once it was established that the tests could not be performed, the charges involving the victim were dismissed. Further, the fact that the DNA tests could not be completed does not necessarily indicate a lack of due diligence on the part of the State, as the tests needed to first be attempted before it could be determined that the samples were insufficient. Accordingly, the State would have met the criteria for the application of Rule 28.3(d)(1), and the 116 days from September 24, 1993-January 18, 1994, could have been excluded under the rule.

In its order, the circuit court also found that the period between January 18, 1994, and May 4, 1994, could be excluded due to congestion of the trial docket. We need not discuss this ruling, however, as it is clear that the two excluded periods that occurred between September 24, 1993, and January 18, 1994, were sufficient to bring Chenowith's trial within the time period provided by the rule.

■ In summary, if Chenowith's attorney had filed a motion to dismiss pursuant to the speedy-trial rule, the State would have been able to prove that the 25-day period between August 30, 1993, and September 24, 1993, and the 116-day period between

September 24, 1993, and January 18, 1994, would have been properly excluded under Rule 28.3. When these periods are subtracted from the 505 days that passed between Chenowith's arrest and trial, the result is 364 days. For speedy-trial purposes, Chenowith was tried within a year of his arrest, and his attorney did not perform deficiently when he did not move for a dismissal of the charges.

Chenowith next argues that his attorney was ineffective for failing to put forth an adequate defense. Specifically, Chenowith argues that his counsel was ineffective for (1) misrepresenting, during his opening statement, that he would call three witnesses; (2) for failing to introduce the testimony of alibi witnesses; and (3) for refusing to allow Chenowith to testify in his own behalf. Chenowith further alleges that the prejudice from counsel's failure is indicated in the result of his co-defendant's trial, in which the alleged witnesses testified and an acquittal was obtained.

During the postconviction hearing, Chenowith testified that he informed his attorney of alibi witnesses who could have established that on March 15, 1993, the first date that the offenses allegedly occurred, he was at his home in Leslie, Arkansas. Chenowith also stated that his attorney knew of his desire to testify and told him that he would introduce his testimony. Chenowith further testified that during his opening statement, his attorney told the jury that he was going to call three witnesses. Chenowith testified that he did not know of counsel's decision not to introduce his testimony, or the testimony of the two alibi witnesses, until he rested the defense case without calling a single witness.

Chenowith's attorney testified that while he interviewed the alibi witnesses and had them present and ready to testify during the trial, he had concerns about the accuracy of their testimony. He also testified that he did not offer an alibi defense because he thought it would be inconsistent with his cross-examination of the victims, in which he sought to establish that their encounters with Chenowith were consensual. Consent, according to counsel, was the defense that Chenowith himself had claimed prior to trial. Counsel further stated that he filed a motion in limine to prevent the State from impeaching Chenowith with any one of his ten prior convictions, but when that motion was unsuccessful, he advised Chenowith not to testify. Regarding the representations he made about the wit-

nesses he planned to introduce for the defense, counsel testified that he could not remember the contents of his opening statement.

Chenowith first argues that his counsel performed deficiently when he told the jury, during his opening statement, that he was going to call three witnesses. According to Chenowith, when counsel failed to follow through with this plan, it suggested to the jury that the defense "had something to hide." He then cites *United States v. Johnson,* 531 F.2d 169 (3rd Cir. ); *cert. denied,* 425 U.S. 997 (1976) for the proposition that such a misrepresentation satisfies the first prong of the *Strickland* analysis.

We first note that the only indication we have that counsel made such a statement during his opening remarks is Chenowith's testimony during the postconviction hearing. The opening statements were apparently never transcribed for the direct appeal. Accordingly, we have no record of the alleged misrepresentation.

Even so, we conclude that this argument has no merit. Chenowith's reliance on *United States v. Johnson* is not persuasive. In that case, the defense attorney told the jury during his opening remarks that he would present alibi evidence when in fact he knew, at the time he made those representations to the jury, that the testimony could not be introduced. The court stated, "(u)nder the facts of this case, we agree that a lawyer of normal competence would have recognized the danger of such a promise knowing that no alibi witness would be available and the petitioner would not testify." The court concluded, however, that Johnson was not prejudiced because the remark was isolated and because the jury was instructed that they could not draw any adverse inferences from Johnson's decision not to testify. In this case, Chenowith contends that his trial counsel made a similar misrepresentation to the jury, and that it was neither isolated nor cured by an appropriate jury instruction.[1]

██ ██ *Johnson* would not support a finding of deficient performance in this case. While the Court of Appeals for the Third Circuit concluded that counsel's opening remarks would constitute deficient performance, a footnote in the opinion stated the following caveat:

---

[1] Counsel's representation during opening remarks was not isolated because at the close of the State's case, when the trial court asked him the number of witnesses he intended to call, he stated "three."

> We do not intimate, however, that a lawyer of normal competence could not promise to produce evidence in his opening statement and then change his mind during the course of the trial and not produce the promised evidence. By trial counsel's own admission, this did not occur in this case.

*Johnson*, 531 F.2d at 176. During the postconviction hearing, Chenowith's counsel testified about his assessment of the evidence at the close of the State's case:

> The Defense strategy that we had used was that these girls consented to these acts. And I felt like on cross examination we had brought out a lot of things in that favor, that they voluntarily got in the car, that they discussed price, that all this kind of thing. That whatever they gave them a ride home. I thought all of that really the jury would consider it should have at least reduced the charges substantially....But I didn't put on any more witnesses because I didn't think it got any better and it could only get worse.

Other evidence introduced during the postconviction hearing indicated that the alibi witnesses were present and ready to testify. Accordingly, this case differs from *Johnson* in that it is apparent that Chenowith's attorney was ready, if necessary, to proceed with a defense. The fact that he decided, after reflecting on the State's case, to not go forward with a defense does not render his performance constitutionally deficient. Rather, it is an example of a strategic decision by counsel, and we have consistently held that matters of trial strategy and tactics, even if arguably improvident, are not grounds for a finding of ineffective assistance of counsel. *State v. Clemmons*, 334 Ark. 440, 976 S.W.2d 923 (1998); *Missildine v. State*, 314 Ark. 500, 863 S.W.2d 813 (1993).

■ Chenowith's next argument, that counsel was ineffective for failing to introduce alibi witnesses, overlaps with the first. It can be resolved in a similar manner. The decision of whether or not to call a witness is generally a matter of trial strategy that is outside the purview of Rule 37. *State v. Dillard*, 338 Ark. 571, 998 S.W.2d 750 (1999); *Helton v. State*, 325 Ark. 140, 924 S.W.2d 239 (1996). Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to his client. *Johnson v. State*, 325 Ark. 44, 924 S.W.2d 233 (1996). When assessing an attorney's decision not to call a particular witness, it must be taken into account that the decision is largely a matter of professional judgment that exper-

ienced advocates could endlessly debate, and the fact that there was a witness or witnesses who could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness. *Johnson* 325 Ark. 44, 924 S.W.2d 233. Nonetheless, such strategic decisions must still be supported by reasonable professional judgment pursuant to the standards set forth in *Strickland. State v. Dillard, supra.*

Chenowith offered the testimony of only one of the alibi witnesses during the postconviction hearing. Lisa Garrison, Chenowith's girlfriend, could have testified that Chenowith was with her in Leslie, Arkansas on the morning of March 15, 1993. She stated that Chenowith watched their daughter as she ran errands, and she produced a check that she wrote that morning. The other alleged alibi witnesses, Jessie and Colleen Hightower, did not testify at the postconviction hearing.

 We affirm the circuit court's denial of this claim as a matter of trial strategy. Chenowith did not introduce the testimony of all of the alibi witnesses he claims should have been called during his trial, and therefore, he has not sustained his burden of proving that his attorney's strategic decision to refrain from calling those witnesses and rely on the consent defense was professionally unreasonable. Furthermore, Ms. Garrison and the Hightowers could have only established an alibi for March 15, 1993, only one of the dates that Chenowith was accused of engaging in criminal activities. As for the check that Ms. Garrison wrote as she ran errands on the morning of March 15, it could only prove that she was in Leslie, Arkansas that morning.

In his last argument, Chenowith contends that his trial counsel was ineffective for refusing to allow Chenowith to testify in his own behalf. According to Chenowith, he did not know that his attorney would not introduce his testimony until he rested the defense. Chenowith contends that he had a constitutional right to decide whether or not to testify, and that his counsel interfered with that right when he refused to put his client on the stand. Chenowith's attorney testified that he did not "refuse" to put Chenowith on the stand, but that he advised Chenowith not to testify because of his record of ten prior felony convictions.

■ The accused has the right to choose whether to testify in his own behalf. *Robinson v. State*, 295 Ark. 693, 751 S.W.2d 335 (1988). Counsel may only advise the accused in making the decision. *Watson v. State*, 282 Ark. 246, 667 S.W.2d 953 (1984). The decision to testify is purely one of strategy. *Isom v. State*, 284 Ark. 426, 682 S.W.2d 755 (1985).

■ The testimony is conflicting on the issue of whether Chenowith made the decision, pursuant to counsel's advice, to refrain from testifying or whether counsel misled Chenowith into believing he would testify and then refused to introduce his testimony at the appropriate point of the trial. The circuit court, in concluding that this was an issue of trial strategy, apparently resolved the conflict and found that Chenowith's attorney advised him not to testify. We are bound by this finding because the resolution of credibility issues is within the province of the trial court. *Johnson v. State*, 321 Ark. 117, 900 S.W.2d 940 (1995).

■ Under the circumstances of this case, counsel's advice was not professionally unreasonable. After the trial court denied counsel's motion in limine the State could have impeached Chenowith's alibi testimony with his ten prior felony convictions.

Affirmed.