Roger Lewis COULTER *v.* STATE of Arkansas

CR 00-281 31 S.W.3d 826

Supreme Court of Arkansas
Opinion delivered November 30, 2000

*Alvin Schay*, for appellant.

*Mark Pryor*, Att'y Gen., by: *James R. Gowen, Jr.*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Roger Lewis Coulter was convicted of capital murder and sentenced to death for killing a five-year-old girl during the course of and in furtherance of raping her. This court affirmed the conviction and sentence in *Coulter v. State*, 304 Ark. 527, 804 S.W.2d 348, *cert. denied*, 502 U.S. 829 (1991). The current appeal is from the order of

the Ashley County Circuit Court denying Appellant's petition for postconviction relief. Our jurisdiction of this appeal is pursuant to Ark. R. Crim. P. 37 and Ark. Sup. Ct. R. 1-2(a)(8). We find no error and affirm.

The record reflects that Appellant was living with the child victim and her mother in Warren, Arkansas. On the morning of April 12, 1989, Appellant left home with the child and was supposed to take her to the local Headstart center, which he did from time to time. According to the child's mother, Appellant returned home that morning somewhat later than normal, wearing dirty clothes and claiming that he had experienced car trouble. After eating breakfast and bathing, Appellant drove to his mother's house to borrow some money. Appellant was later seen cashing a check from his mother at a local bank. Appellant did not return the child home that afternoon. Her mother and grandmother eventually went to the Headstart center to pick up the child. There, they were informed that the child had not been dropped off that day.

The victim's family filed a missing-person report with the local police, and a search for the child was undertaken. Police officers found the child's body the following day, in a wooded area where witnesses had seen Appellant in his car the day before. The child's partially clothed body was found stuffed inside a hollow tree, covered by some branches and leaves. Testimony from the state's chief medical examiner established that the child had been raped and ultimately died of smothering and strangulation. Appellant was eventually arrested in California, some five weeks after the murder.

Following his conviction and appeal, Appellant filed a petition for postconviction relief pursuant to Rule 37. Appellant raised seven grounds for relief: (1) the prosecutor made improper comments during closing argument; (2) the trial court erroneously excluded two veniremen from the jury; (3) the aggravating circumstance submitted by the State was insufficient as a matter of fact and law; (4) there is an unconstitutional overlap between the capital murder and first-degree murder statutes; (5) trial counsel was ineffective for failing to present testimony from Appellant's siblings during the penalty phase; (6) trial counsel was ineffective for failing to obtain a serology report from the state crime laboratory; and (7) trial counsel was ineffective for failing to discover and obtain Appellant's prior mental-health records from the Arizona Department of

Correction. The trial court denied relief on all grounds. We begin our review by examining the claims of ineffective assistance of counsel.

 The test for proving claims of ineffective assistance of counsel and the corresponding standard of review are well settled:

> To prevail on a claim of ineffective assistance of counsel, the petitioner must show first that counsel's performance was deficient. *Jones v. State*, 340 Ark. 1, 8 S.W.3d 482 (2000); *Weaver v. State*, 339 Ark. 97, 3 S.W.3d 323 (1999). This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 99, 3 S.W.3d at 325. Petitioner must also show that the deficient performance prejudiced his defense; this requires a showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.* Unless the petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Chenowith v. State*, 341 Ark. 722, 19 S.W.3d 612 (2000) (*per curiam*); *Thomas v. State*, 330 Ark. 442, 954 S.W.2d 255 (1997).
>
> The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* To rebut this presumption, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, *i.e.*, that the decision reached would have been different absent the errors. *Id.* A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id.* In making a determination on a claim of ineffectiveness, the totality of the evidence before the factfinder must be considered. *Chenowith*, 341 Ark. 722, 19 S.W.3d 612. This court will not reverse the denial of postconviction relief unless the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Jones*, 340 Ark. 1, 8 S.W.3d 482; *State v. Dillard*, 338 Ark. 571, 998 S.W.2d 750 (1999).

*Noel v. State*, 342 Ark. 35, 38, 26 S.W.3d 123, 125 (2000). With this standard in mind, we review the issues of ineffectiveness raised by Appellant.

## I. Witnesses in Mitigation

Appellant first argues that his trial counsel was ineffective for failing to interview his siblings for the purpose of presenting mitigating evidence during the penalty phase of his trial. Appellant asserts that two of his brothers, David Coulter and Eddie Coulter, would have testified that Appellant had been sexually abused by his uncle as a child. Affidavits filed by both brothers indicate that they were willing to testify on Appellant's behalf, but they were never contacted by defense counsel about the case. Their affidavits reflect assertions that several of the male children, including Appellant, were sexually abused by their uncle. The affidavits also contained descriptions of Appellant's turbulent childhood and past mental problems. In addition, Eddie's affidavit reflects his opinion that the victim's mother and grandmother, Eddie's wife, did not want Appellant to get the death penalty, but they were never asked about their feelings by defense counsel.

In his deposition, trial counsel, Arthur L. Allen, explained that he did not attempt to contact Eddie because he considered him to be hostile to the defense. Allen pointed out that even though Eddie is Appellant's brother, he was also married to the victim's grandmother at the time. Allen stated that Eddie was the only one of Appellant's siblings that attended the trial, and that neither Eddie nor his wife had given him any impression that they would have been willing to talk to him about the case. Indeed, Allen recalled that during his closing argument, he had to have them removed from the courtroom because they continued to interrupt him. Allen stated that he did not recall talking to any members of Appellant's family, other than his mother and stepfather. He admitted that David's testimony that he, too, had been sexually abused by his uncle could have been mitigating evidence. Allen agreed with defense counsel that Appellant's mother had given similar testimony.

The trial court denied relief on this point because the proffered testimony from the brothers would have been cumulative to that given by Appellant's mother. The trial court also relied on the fact that the jury had unanimously found as a mitigating circumstance that "[Appellant] did not have the opportunities of a normal childhood because of the divorce of his parents, the alcoholism of his father, and his placement in foster homes." We affirm the trial court's ruling.

■ The constitutional guarantee of effective assistance of counsel extends to the sentencing phase of the defendant's trial. *See, e.g., Sanford v. State,* 342 Ark. 22, 25 S.W.3d 414 (2000); *Nooner v. State,* 339 Ark. 253, 4 S.W.3d 497 (1999). *See also Pickens v. Lockhart,* 714 F.2d 1455 (8th Cir. 1983). Counsel's failure to investigate and present substantial mitigating evidence during the sentencing phase may constitute ineffective assistance of counsel. *Sanford,* 342 Ark. 22, 25 S.W.3d 414 (citing *Williams v. Taylor,* 120 S. Ct. 1495 (2000)). *See also Pickens,* 714 F.2d 1455. Counsel is obligated to conduct an investigation for the purpose of ascertaining mitigating evidence, and the failure to do so is error. *Williams,* 120 S. Ct. 1495. Such error, however, does not automatically require reversal unless it is shown that, but for counsel's errors, there is a reasonable probability that the sentence would have been different. *Id.* When reviewing a claim of ineffectiveness based upon failing to present adequate mitigating evidence, we must view the totality of the evidence — both that adduced at trial and that adduced in the postconviction proceeding. *Id.* (citing *Clemons v. Mississippi,* 494 U.S. 738 (1990)). The record of Appellant's sentencing trial reflects that three witnesses were called to give mitigating evidence: Appellant's mother, Laverne Temple; Dr. William Martin, a clinical psychologist; and Sister Maria Liebeck.

Appellant's mother testified to the following events. Appellant was the eleventh of thirteen children. He was born prematurely and suffered health problems as a result. The family was poor. Appellant was six or seven years old when his parents divorced. His father had a drinking problem, such that when he drank, he would get out of control and threaten Appellant's mother and the children. When his parents divorced, some of the children, including Appellant, were placed in foster homes. He was eventually returned to his mother's home after she remarried. When he was twelve or thirteen, he was placed in reform school for running away from home and refusing to go to school. As an adult, he spent time in prison.

Appellant's mother also testified that Appellant's uncle had sexually abused the children. She explained that she was not aware of the abuse while it was happening, but that she became aware of it some time later. On cross-examination, however, she admitted that she had no personal knowledge that Appellant had been sexually abused, because she had not witnessed any abuse. Appellant argues that the evidence brought out on cross-examination of his mother

completely negated her testimony that he was sexually abused as a child. He argues that the testimony of his brothers was essential to establish such abuse in the minds of the jurors. He asserts that had the jury heard his brothers' testimony, there is a reasonable probability that the outcome of his sentence would have been different, given that the jury found only one aggravating circumstance. We are not persuaded by this argument.

The testimony offered in their affidavits fails to show that Appellant's brothers had any more personal knowledge of the sexual abuse of Appellant than their mother. David's affidavit reflects that "we had an uncle, Jimmy, who sexually abused the male children of our family. He abused me, and both Ricky and [Appellant] told me he abused them, also." Similarly, Eddie's affidavit reflects that "[w]e had a homosexual uncle and he sexually abused [Appellant] and some of my other brothers, and tried to sexually abuse me." It is not clear from Eddie's affidavit how he learned of Appellant's abuse, and David's affidavit states only that Appellant told him that he had been abused by their uncle. Accordingly, their testimony would have been subject to the same cross-examination that Appellant claims devastated his mother's testimony. Additionally, as noted above, his mother was not the only person to give testimony about Appellant's abusive childhood.

Dr. Martin, a psychologist retained by the defense, gave the following testimony concerning his examination and diagnosis of Appellant. Appellant's father had terrorized the whole family, and his mother had an explosive temper. There was a lot of conflict in the family, and they lived in fear of what their father might do next. During his parents' divorce, some of the children, including Appellant, had been placed in foster homes; two of Appellant's sisters were subsequently adopted by other families. Appellant returned home to his mother and stepfather when he was eight or nine years old. The new family situation was not much better, because his stepfather was a heavy drinker and was strict and abusive. It was at this point that Appellant began to rebel against his parents' authority and ran away from home, which eventually landed him in reform school. Following his experience in reform school, Appellant reported that he had been the victim of a homosexual rape.[1]

---

[1] It is not clear from Dr. Martin's testimony when the rape occurred or whom was the perpetrator.

Dr. Martin testified further that there was never really any period of stability in the family during Appellant's childhood. He indicated that Appellant had a history of mental problems, and that he had been treated in the past with medication. He stated that Appellant was in the special-treatment unit in the Arizona prison system, where he was administered medication for his aggressive and explosive behavior. Appellant was similarly treated at a California mental-health center. Dr. Martin indicated that Appellant responded well to the medication treatments; however, once he was released from those facilities, he failed to continue with the treatment on his own. Ultimately, Dr. Martin diagnosed Appellant as having antisocial personality disorder and as having demonstrated a pattern of rather heavy alcohol abuse. He stated that Appellant's disorder could be managed with the proper medication, and that the structured nature of prison life would be conducive to that type of treatment. Dr. Martin's diagnosis of Appellant was confirmed by Dr. Michael Simon, who had previously examined Appellant at the Arkansas State Hospital.

Sister Liebeck testified that she had talked to Appellant during the time that he was in jail awaiting trial. She stated that Appellant talked to her about his childhood and told her that he could not remember feeling loved as a young child. She stated that since his incarceration, Appellant had found God. She also stated that she believed that Appellant had the will to make something of himself, and that he possessed redeemable qualities that would justify sparing his life.

■ ■ In light of all the evidence that was submitted in mitigation, and the jury's unanimous finding that Appellant's childhood was a mitigating circumstance, we cannot say that the trial court erred in finding that trial counsel was not ineffective for failing to call as witnesses additional members of Appellant's family. Generally, the decision whether to call a witness is a matter of trial strategy that is outside the purview of Rule 37. *State v. Dillard*, 338 Ark. 571, 998 S.W.2d 750 (1999). Moreover, the omission of a witness when his or her testimony is cumulative does not deprive the defense of vital evidence. *Helton v. State*, 325 Ark. 140, 924 S.W.2d 239 (1996). Here, the trial court found that the proffered testimony from Appellant's brothers would have been cumulative to that given by his mother. The trial court thus found that Appellant had not shown that he was prejudiced by counsel's failure to secure

their testimony for trial. Based on the totality of the evidence that was presented during the sentencing trial, we cannot say that this finding is clearly erroneous. Appellant has failed to demonstrate that there is a reasonable probability that, but for counsel's failure to present testimony from his brothers, the jury would have reached a different result, namely a sentence of life imprisonment without parole. We thus affirm the denial of relief on this point.

## II. Serology Report

■ Appellant's second point for reversal is that trial counsel was ineffective for failing to obtain the serology report from the state crime laboratory. According to his affidavit, Investigator Tommy Crosthwait, of the Arkansas Death Penalty Resource Center, obtained the serology report from the crime lab in 1992. His affidavit indicates that the report showed that (1) the swab samples taken from the victim did not reveal the presence of semen or other male fluids, and (2) the clothing worn by Appellant the day of the crime did not reveal the presence of blood. The report itself, however, is not included in either the abstract or the record on appeal. This alone is reason to affirm the trial court's ruling. It is Appellant's burden to produce a record sufficient to demonstrate prejudicial error, and this court does not consider evidence not included in the record on appeal. *See Martin v. State,* 337 Ark. 451, 989 S.W.2d 908 (1999) *(per curiam); Edwards v. State,* 321 Ark. 610, 906 S.W.2d 310 (1995).

Notwithstanding this procedural bar, the argument must fail because Appellant does not indicate how counsel's failure to obtain this report prejudiced his trial. It is not clear to us how this evidence would have been relevant, let alone exculpatory. The fact that blood was not detected on Appellant's clothing is not significant, given that the child died as a result of smothering and strangulation. Similarly, the absence of semen does not annul the jury's finding that the murder was committed in the course of or in furtherance of a rape. The medical examiner testified that there was evidence that the child had been penetrated with a foreign object. He stated that the bruising and tearing of the child's anus and rectum were among the most severe that he had ever seen. Given this strong testimony, we fail to see how a lack of semen would negate the rape itself or would cast doubt on Appellant as the perpetrator.

■ Furthermore, the record demonstrates that trial counsel cross-examined the medical examiner regarding the vaginal swabs taken during the autopsy. When trial counsel inquired about the availability of scientific testing, the medical examiner stated that such tests could establish the identity of the perpetrator. During his closing argument, trial counsel pointed out that the State had not provided any evidence that the samples taken from the child's body had been tested and identified Appellant as the perpetrator. In other words, counsel suggested to the jurors that the State had not introduced such evidence because it did not point to Appellant as the perpetrator. Clearly, it would not have been beneficial to Appellant's defense to have trial counsel reveal to the jury that the serology report merely showed that there was no semen present to test. We thus affirm on this point.

### III. Prior Mental-Health Records

■ For his third point, Appellant argues that trial counsel was ineffective for failing to discover that he had been diagnosed as paranoid schizophrenic while he was incarcerated in Arizona. The trial court denied this claim on the basis that there was no information contained in the record showing that such a diagnosis had ever existed. We agree with this ruling, as we can find no proffer of the Arizona records, either in the abstract or the record on appeal. As stated in the previous point, this court will not go outside the record to determine issues on appeal. *Martin*, 337 Ark. 451, 989 S.W.2d 908; *Edwards*, 321 Ark. 610, 906 S.W.2d 310.

■ In any event, Appellant has failed to show how counsel's failure to secure the records prejudiced his trial. Indeed, Appellant merely asserted in his petition that had counsel obtained the Arizona records, he would have been able to secure funds to hire an independent psychiatrist to evaluate his mental state. This is a moot point, as the record clearly reflects that when the trial court denied such funds, trial counsel used his own money to secure an independent examination of Appellant. Furthermore, this court affirmed the trial court's denial of such funds on the ground that Appellant "got the benefit of the assistance he sought through appointed counsel's generosity and sense of professional obligation." *Coulter*, 304 Ark. 527, 541, 804 S.W.2d 348, 356. Accordingly, Appellant has failed to demonstrate that he was prejudiced by counsel's failure

to obtain his Arizona prison records. We thus affirm the trial court's denial of relief on this point.

### IV. Miscellaneous Claims

We summarily affirm the remaining four points, as they were previously raised by Appellant in his direct appeal and were rejected by this court. We agree with the trial court that Rule 37 does not provide an opportunity to reargue points that were settled on direct appeal. *See, e.g., Trimble v. State,* 336 Ark. 437, 986 S.W.2d 392 (1999) *(per curiam); Hall v. State,* 326 Ark. 318, 933 S.W.2d 363 (1996); *Dunham v. State,* 315 Ark. 580, 868 S.W.2d 496 (1994). We note, however, that one aspect of Appellant's third argument was not raised or considered in his direct appeal and thus must be addressed in this appeal.

Particularly, Appellant argues that the aggravating circumstance submitted at trial was invalid because it elevated the requisite mental state for the crime alleged. He claims that because he was convicted of causing the child's death under circumstances manifesting extreme indifference to the value of human life, it was error for the State to assert in the penalty phase that the murder was committed for a purpose, namely to avoid arrest. He argues further that counsel was ineffective for failing to argue this issue.

The record reflects that the jury convicted Appellant of capital felony murder on the basis that he killed the child during the course of and in furtherance of raping her, under circumstances manifesting extreme indifference to the value of human life. *See* Ark. Code Ann. § 5-10-101(a)(1) (Repl. 1997). During the penalty phase, the jury found the aggravating circumstance that the capital murder was committed for the purpose of avoiding or preventing arrest. *See* Ark. Code Ann. § 5-4-604(5) (Repl. 1997). The crux of Appellant's argument is that the term "purpose," as used in the aggravating circumstance, is inconsistent with the phrase "under circumstances manifesting extreme indifference to the value of human life." We disagree. This court has consistently defined that phrase as requiring proof of deliberate conduct on the part of the perpetrator that culminates in the death of a person. *See Flowers v. State,* 342 Ark. 45, 25 S.W.3d 422 (2000); *Sanford v. State,* 331 Ark. 334, 962 S.W.2d 335 (1998). The requirement of deliberate con-

duct is consistent with the jury's conclusion in this case that the decision to kill the child, after raping her, was motivated by Appellant's desire or purpose to avoid arrest. Accordingly, we reject Appellant's argument on this point, and we affirm the trial court's denial of relief.

Affirmed.