Darrell Wayne HILL *v.* STATE of Arkansas

CR 00-1210 65 S.W.3d 408

Supreme Court of Arkansas
Opinion delivered January 24, 2002

*Mongomery, Adams & Wyatt, PLLC,* by: *Dale E. Adams,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Brad Newman,* Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Darrell Wayne Hill was initially convicted in 1980 of the capital felony murder, kidnapping, and aggravated robbery of Donald Lee Teague as well as the attempted capital murder, kidnapping, and aggravated robbery of E. L. Ward. Hill was sentenced to death. This court affirmed in part and reversed in part on appeal. *See Hill v. State,* 275 Ark. 71, 628 S.W.2d 284 (1982), *cert. denied,* 459 U.S. 882 (1982) (*Hill I*). Specifically, we affirmed the conviction and sentence for the capital felony murder of Donald Lee Teague but set aside the offenses of kidnapping and aggravated robbery with respect to Teague. We further affirmed the convictions and sentences for attempted capital felony murder, kidnapping, and aggravated robbery in connection with E. L. Ward.

Hill subsequently petitioned for postconviction relief under our prior Rule 37, and this court denied the petition. *See Hill v. State,* 278 Ark. 194, 644 S.W.2d 282 (1983) (*Hill II*). Hill then petitioned the United States District Court, Eastern District of Arkansas, for *habeas corpus* relief, which was granted. *See Hill v. Lockhart,* 824 F. Supp. 1327 (E.D. Ark. 1993) (*Hill III*). The federal

district court concluded that trial counsel did not render Hill effective assistance of counsel with respect to investigating and presenting an insanity defense during the guilt phase of the trial. The court also concluded that counsel did not render Hill effective assistance of counsel during the penalty phase. The court found, too, that, given Hill's long history of mental illness, drug and alcohol abuse, and troubled childhood, it was unreasonable for counsel not to offer into evidence the pertinent medical records during the penalty stage. The court further found that it was not reasonable for counsel to fail to thoroughly investigate possible mitigating evidence. *See id.*

The State appealed, and Hill cross-appealed. The Eighth Circuit Court of Appeals reversed the federal district court with respect to ineffective assistance of counsel at the guilt phase but affirmed the court as to ineffective assistance of counsel during the penalty phase. *See Hill v. Lockhart,* 28 F.3d 832 (8th Cir. 1994) (*Hill IV*). Accordingly, the Eighth Circuit reinstated Hill's convictions for murder and attempted murder but vacated the sentences for each and directed the federal district court to order the State to retry the question of the proper penalty relating to those convictions. *See id.*

Following a resentencing trial, Hill was again sentenced to death, and a notice of appeal was filed. However, on February 27, 1996, Hill filed a *pro se* "Motion to Stop Appeal Process," and his counsel filed a motion for evaluation to determine Hill's capacity to make a knowing and voluntary waiver of his right to appeal. *See Hill v. State,* 323 Ark. 796, 917 S.W.2d 537 (1996) (*per curiam*) (*Hill V*). This court remanded the matter to the trial court to make findings on whether Hill had the mental competency to abandon his appeal. *See id.*

Ultimately, this court declined to honor Hill's request to waive his appeal. *See Hill v. State,* 327 Ark. 777, 940 S.W.2d 487 (1997) (*per curiam*) (*Hill VI*). Hill's sentence was later affirmed by this court in *Hill v. State,* 331 Ark. 312, 962 S.W.2d 762 (1998) (*Hill VII*), *cert. denied,* 525 U.S. 860 (1998). On January 28, 1999, Hill filed a petition for postconviction relief pursuant to Ark. R. Crim. P. 37.5 and later filed an amended petition on August 16, 1999. Following a hearing, Hill's petition was denied by the trial court.

## I. Rule 610

Hill first argues that his trial counsel was ineffective at resentencing for failing to object properly to, and then for failing to

appeal, the manner in which the prosecutor questioned three of his mitigation witnesses. All three of the witnesses testified that they were friends of Hill's, and there were references to the fact that he had changed over twenty years and that he could now lead a productive life.[1] Hill specifically argues that the prosecutor's cross-examination of the three witnesses should have been challenged by trial counsel on the basis of Ark. R. Evid. 610, which, he argues, clearly prohibits the use of one's religious beliefs to question or enhance one's credibility. He asserts that the prosecutor's questioning amounted to using a "religious belief to support an argument that the testimony of the holder of that belief is not credible on account of that belief," all of which, he contends, violates Rule 610. He further argues that the prosecutor's closing argument that because of their beliefs the three mitigation witnesses could not sit on the jury, and, thus, it was the duty of the jurors to follow the law, is the equivalent of arguing that it was the duty of the jurors to return a death sentence. These statements, Hill contends, were manifestly improper and would have warranted a mistrial, had trial counsel objected to them properly. He concludes that for these reasons, had defense counsel raised these issues properly on direct appeal, there is a reasonable probability that he would have obtained a reversal.

This court uses the following standard of review when examining a claim of ineffectiveness:

> To prevail on a claim of ineffective assistance of counsel, the petitioner must show first that counsel's performance was deficient. *Jones v. State,* 340 Ark. 1, 8 S.W.3d 482 (2000); *Weaver v. State,* 339 Ark. 97, 3 S.W.3d 323 (1999). This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 99, 3 S.W.3d at 325. Petitioner must also show that the deficient performance prejudiced his defense; this requires a showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.* Unless the petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Chenowith v. State,* 341 Ark. 722,

---

[1] The State points out the somewhat bizarre circumstance that Hill's attorney for the Rule 37.5 proceedings was the same as his attorney at the resentencing. The trial court pointed out at the beginning of a preliminary Rule 37.5 proceeding that Hill had, first, waived a Rule 37.5 proceeding but then asked that the same attorney represent him for purposes of postconviction matters. We question the propriety of such dual representation but are unwilling to reject the Rule 37.5 appeal *sua sponte* for that reason alone.

19 S.W.3d 612 (2000) (*per curiam*); *Thomas v. State,* 330 Ark. 442, 954 S.W.2d 255 (1997).

> The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* To rebut this presumption, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, *i.e.,* that the decision reached would have been different absent the errors. *Id.* A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id.* In making a determination on a claim of ineffectiveness, the totality of the evidence before the factfinder must be considered. *Chenowith,* 341 Ark. 722, 19 S.W.3d 612. This court will not reverse the denial of postconviction relief unless the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Jones,* 340 Ark. 1, 8 S.W.3d 482; *State v. Dillard,* 338 Ark. 571, 998 S.W.2d 750 (1999).

*Camargo v. State,* 346 Ark. 118, 122-23, 55 S.W.3d 255, 258 (2001) (quoting *Coulter v. State,* 343 Ark. 22, 27, 31 S.W.3d 826, 829 (2000)). *See also Strickland v. Washington,* 466 U.S. 668 (1984).

Hill's claim of ineffectiveness has essentially two parts: (1) counsel was ineffective in not making the proper objections at resentencing, and (2) counsel was ineffective for failing to raise the issue on appeal. With respect to these claims, there were three mitigation witnesses called by the defense: Freddie Nixon, Laura Organ, and Janis Golden. As to Ms. Nixon, Hill's counsel objected to the following question by the prosecutor on cross-examination: "Ms. Nixon, do you have any religious or philosophical beliefs that would cause you to oppose the imposition of the death penalty?" Counsel objected to the cross-examination of Ms. Nixon about her philosophy. The trial court sustained the objection. The prosecutor later questioned Ms. Nixon about her involvement with certain organizations. Defense counsel again objected, and the trial court sustained the objection. Later, the prosecutor again asked what organizations Ms. Nixon belonged to besides the Methodist Church. She responded that she was a member of the Arkansas Interfaith Conference, which, she divulged, was not involved in death cases. Finally, the prosecutor asked Ms. Nixon whether she belonged to any organization which had taken a position with regard to Hill's situation. Hill's counsel started to object, and Ms. Nixon answered, "The United Methodist Church." The trial court then overruled counsel's objection. Ms. Nixon added that the

Methodist Church had an official position in opposition to capital punishment as a part of its overall policy regarding criminal justice. The trial court sustained counsel's objection when the prosecutor asked Ms. Nixon whether that was her position as well. She then testified that there was room for disagreement on the death penalty within the Methodist church. During the prosecution's cross-examination of Ms. Nixon, there were several sidebar conferences between counsel and the trial court regarding defense counsel's objections.

Next, Ms. Organ testified that she met Hill while working at the United Methodist Headquarters and that she was a member of the United Methodist Church. The prosecutor asked her why she was testifying, and she answered that it was due to her close friendship with Hill. The prosecutor asked Ms. Organ whether she belonged to any organization within the Methodist Church or any other special groups. She replied that she was a member of Civitan. The prosecutor then asked about any other groups to which she belonged. Defense counsel objected based on his previous objections made, and the trial court overruled the objection. Ms. Organ replied that she was a member of the Coalition to Abolish the Death Penalty. At a sidebar conference, Hill's counsel asked the court about the prosecutor's interrogation, and the court replied:

> He didn't get into the views. I didn't want the views. The reason I made that ruling is, I'm trying to be at least as consistent as I can in this trial as I was in the other trial. So, I'm not going to get into the views. I think that's proper. I don't know if my ruling is as proper in the beginning, but I'm going to stick with it. I think Mr. Holt [the prosecutor] understands that. I'm just trying to be consistent with the ruling I made with respect to Rev. Nixon's previous ruling [in the original trial]. You know, a bias is something that quite frankly, Mr. Holt has not gotten in to and I'm trying to stay out of people's views on this issue, not organizations or what they belong to. For example, you show that she belongs to a Victim's Rights Organization, you certainly can bring that out. But, now that's — I don't blame you for approaching. I don't have any problem with that. I'm trying to explain the basis for both of my rulings.

With regard to Janis Golden, she testified on direct examination that she met Hill while working as an administrative assistant in the bishop's office of the United Methodist Church for the Arkansas area. On cross-examination, the prosecutor asked whether she held the view that the State should not impose the death penalty.

Defense counsel objected on previously asserted grounds, and the trial court overruled the objection. She replied that yes, she did.

It was the prosecutor's position throughout his cross–examination of these three mitigation witnesses that he could delve into a witness's bias against the death penalty as contrasted with a showing of impaired credibility based on religious beliefs.

■ Arkansas Rule of Evidence 610 provides: "Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature his credibility is impared [impaired] or enhanced." Ark. R. Evid. 610 (2001). It is clear from an examination of the testimony of each of the three witnesses, and the appellant's objections to the prosecutor's cross-examination of each, that the proper objections were made. Hill's counsel specifically objected to the witnesses' being cross–examined on their philosophies, and the trial court sustained those objections and only permitted the prosecutor to question the reason why each witness was testifying.

Rule 610 clearly makes inadmissible one's beliefs or opinions on matters of religion for purposes of demonstrating a lack of credibility. But that was not the case here. As outlined above, each witness merely testified about their memberships in organizations and, in the case of Ms. Golden, her beliefs about the death penalty. None testified as to their beliefs or opinions based on religious convictions. Moreover, defense counsel was adroit in making his objections to assure that the prosecutor did not impermissibly run afoul of Rule 610.

■ We conclude that Hill's counsel did make the proper objections. Although he did not specifically reference Rule 610, it appears from the context of these objections and the colloquies with the trial court that Rule 610 was the premise for his argument. Accordingly, we hold that counsel was not ineffective for merely failing to articulate the rule number. *See Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000) (citing Ark. R. Evid. 103) (stating "[t]he specific ground of an objection must be stated if the specific ground was not apparent from the context").

■ We note, in addition, that this court conducted an Ark. Sup. Ct. Rule 4-3(h) review in *Hill VII, supra,* in which we examined all rulings adverse to Hill for prejudicial error. Most of Hill's counsel's objections during the prosecutor's cross-examination of his three mitigation witnesses were sustained by the trial

court. However, those that were overruled were reviewed by this court under Rule 4–3(h), and no prejudicial error was found. *See Hill VII, supra.* Our review and affirmance of those overruled objections became the law of the case. *See Davis v. State,* 325 Ark. 96, 925 S.W.2d 768 (1996). Accordingly, any suggested ineffectiveness on the part of Hill's counsel for failing to appeal the court's rulings is without merit.

■ Nor do we believe that trial counsel was ineffective for not objecting to the prosecutor's closing argument about the inability of the three mitigation witnesses to sit as jury members because of their bias against the death penalty. Asserting the bias of a witness is different from asserting a witness's impaired credibility due to religious beliefs under Rule 610. *See, e.g., Redman v. Watch Tower Bible & Tract Soc'y of Penn.,* 69 Ohio St. 3d 98, 630 N.E.2d 676 (1994). We conclude that any objection on this point would not have led in any respect to a new trial.

## II. Jury Instructions

Hill next claims that his counsel was ineffective for failing to appeal the trial court's denial of two proffered jury instructions: (1) a definition of mitigation from *James v. State,* 11 Ark. App. 1, 665 S.W.2d 883 (1984), and (2) an instruction informing the jury that Hill would not be eligible for parole if he were sentenced to life imprisonment without the possibility of parole. He further asserts that the trial court's denial of relief on the basis of this court's Rule 4–3(h) review was error. Appellant submits that where the future dangerousness of the defendant is at issue, and state law prohibits the defendant's release on parole for capital murder, due process requires that the sentencing jury be informed that the defendant is not parole eligible. For authority, Hill cites us to *Simmons v. South Carolina,* 512 U.S. 154 (1994).

On the proffered instruction regarding mitigation, Hill observes that this court has held that a definition of mitigation is not required. *See Pruett v. State,* 287 Ark. 124, 697 S.W.2d 872 (1985). He asserts, however, that the *Pruett* case should be overruled. He concludes that there was a reasonable probability that his appeal on these points would have been successful, had counsel argued the error in refusing the two instructions. He further points out that trial counsel was ineffective in never getting a ruling on the mitigation instruction.

 Hill's argument on this last point is without merit. Both proffered instructions were marked: "Defense Proffered Refused." Thus, there was clearly a ruling, and neither instruction was given to the jury. Moreover, this court found no prejudicial error in its Rule 4-3(h) review in *Hill VII, supra,* and that is law of the case. *See Davis v. State, supra.* But, even so, the trial court was on sound ground in rejecting the proffered parole instruction, which contemplated an absolute prohibition against parole, since the governor could always commute a sentence of life imprisonment without parole. Because this court has held that there is no error in refusing an instruction which may have misled or confused the jury, *see Townsend v. State,* 308 Ark. 266, 824 S.W.2d 821 (1992), counsel would not have been ineffective for failing to raise such an issue on appeal. *See Sanford v. State,* 342 Ark. 22, 25 S.W.3d 414 (2000).

With regard to *Simmons v. South Carolina, supra,* there, the Court based its ruling on the fact that the jury was faced with a penalty decision between death or life imprisonment, and the trial court refused to inform the jury that state law prohibited the defendant's release on parole.[2] The Court specifically noted: "In this case, the jury reasonably may have believed that petitioner could be released on parole if he were not executed." *Simmons,* 512 U.S. at 161.

 The South Carolina circumstances were manifestly not the same as what occurred at resentencing. In this case, the trial court specifically instructed the jury: "After making the determinations required to complete Form One and Form Two, if applicable, you will then complete Form Three. . . . If you make those findings, you will impose the death penalty. Otherwise, you will sentence Darrel [sic] Wayne Hill to life imprisonment without parole." Hence, in the case at hand, the fact that the life imprisonment was without parole was specifically communicated to the jury.

 As to Hill's proffered mitigation instruction, we decline to overrule *Pruett v. State, supra.* In that case, we concluded

---

[2] Although the United States Supreme Court most recently discussed this issue again in *Kelly v. South Carolina,* ___ U.S. ___ (Jan. 9. 2002), it again based its decision on South Carolina's sentencing scheme. It reasoned that the state supreme court erred in its analysis that appellant was not entitled to an instruction that he would be ineligible for parole if he received a life sentence because state law provided the jury with a third sentencing alternative and future dangerousness was not an issue. The Court noted that because the jury can only make a sentencing recommendation if it finds an aggravating circumstance, and that at that time, the only alternative was death or life without parole, the state court's reasoning was flawed. The Court further found that appellant's future dangerousness was at issue.

that the statutory language naming the elements of mitigation was not vague or beyond the common understanding of the ordinary juror. Thus, an instruction providing a definition of mitigation was not necessary. In the instant case, the jury was instructed that: "Unlike aggravating circumstances, you are not required to be convinced of the existence of a mitigating circumstance beyond a reasonable doubt. A mitigating circumstance is shown if you believe from the evidence that it probably existed."

Hill, in asking the court to overrule a prior decision, has the burden of showing that the court's refusal to overrule the prior decision would result in injustice or great injury. *See B.C. v. State,* 344 Ark. 385, 40 S.W.3d 315 (2001). He has failed to meet that burden. We hold, once more, that no further definition of mitigation was necessary.

### III. Aggravating Circumstances

For his final point, Hill argues that counsel erred in not appealing the admission of two prior felony convictions as aggravating circumstances. The convictions at issue were an Oklahoma conviction for robbery with a firearm and a Missouri conviction for first degree robbery. Hill submits that these convictions were inadmissible as aggravators, because it could not be determined from the documents comprising the exhibits that these were crimes of violence, as required by Ark. Code Ann. § 5-4-604(3) (Repl. 1997). Accordingly, he maintains that the failure of counsel to object to the Oklahoma conviction and then his failure to raise the admissibility of both convictions on appeal constituted ineffective assistance of counsel.

We agree with the State that in connection with the Missouri conviction, the trial court overruled counsel's objection. As stated above, review of that ruling would have been included in this court's Rule 4-3(h) review of all rulings adverse to the appellant, and it became law of the case. *See Davis v. State, supra.* As no prejudicial error was found in *Hill VII, supra,* in that review, appellant's argument is without merit.

As for the Oklahoma conviction, the State is also correct. Because trial counsel did not specifically object to the admission of the Oklahoma conviction, it was not reviewed by the court in his direct appeal under Rule 4-3(h). Nevertheless, following the penalty phase, the jury found the following aggravating circumstances:

Darrel [sic] Wayne Hill previously committed another felony an element of which was the use of threat or violence to another person, or creating a substantial risk or [sic] death or serious physical injury to another person.

In the commission of the capital murder, Darrel [sic] Wayne Hill knowingly created a great risk of death to a person other than the victim.

The capital murder was committed for the purpose of avoiding or preventing an arrest.

The capital murder was committed for pecuniary gain.

 ██ The jury further found no evidence of any mitigating circumstances. Under these circumstances, this court can conduct a harmless-error analysis:

(d) On appellate review of a death sentence, if the Arkansas Supreme Court finds that the jury erred in finding the existence of any aggravating circumstance or circumstances for any reason and if the jury found no mitigating circumstances, the Arkansas Supreme Court shall conduct a harmless error review of the defendant's death sentence. The Arkansas Supreme Court shall conduct this harmless error review by:

(1) Determining that the remaining aggravating circumstance or circumstances exist beyond a reasonable doubt; and

(2) Determining that the remaining aggravating circumstance or circumstances justify a sentence of death beyond a reasonable doubt.

(e) If the Arkansas Supreme Court concludes that the erroneous finding of any aggravating circumstances by the jury would not have changed the jury's decision to impose the death penalty on the defendant, then a simple majority of the court may vote to affirm the defendant's death sentence.

Ark. Code Ann. § 5-4-603(d) (Repl. 1997). Assuming it was error for the jury to consider Hill's prior Oklahoma conviction and, thus, counsel was ineffective in not objecting to it, there were sufficient other aggravators to sustain the death sentence. We conclude that based on the three other aggravators affirmed by this court in *Hill VII, supra,* the jury would not have changed its decision to impose

the death penalty, even without consideration of the Oklahoma conviction as an aggravator. Accordingly, counsel was not ineffective in failing to raise the issue of the Oklahoma conviction to the trial court or on appeal.

Affirmed.