Albert BURTON *v.* STATE of Arkansas

CR 05-494

Supreme Court of Arkansas
Opinion delivered June 29, 2006

[Supplemental Dissenting Opinion on Denial of Rehearing September 21, 2006.]

---

*Albert Burton, pro se*, for appellant.

*Mike Beebe*, Att'y Gen., by: *David J. Davies*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. In this case, Appellant Albert Levon Burton appeals the circuit court's denial of his petition for post-conviction relief under Ark. R. Crim P. 37. Appellant was convicted by a jury of two counts of aggravated assault, one count of criminal mischief, and one count of being a felon in possession of a firearm. The allegations underlying those convictions were that Appellant shot at and hit the car occupied by Wanda and Janet Jones. The convictions were affirmed on direct appeal. *Burton v. State*, CACR 04-282 (Ark. App. Mar. 2, 2005). In his petition for post-conviction relief, Appellant argued, among other things, that his counsel at trial was deficient for failing to object to the introduction of a prior conviction because it was prejudicial to his case, that counsel was deficient in failing to request severance of the felon-in-possession charge, and in allowing Appellant to be convicted outside of the presumptive sentence range. The circuit court denied the request for post-conviction relief, and Appellant now appeals that order.

## I. Failure to Sever the Felon-In-Possession Charge

Appellant's first point on appeal is that trial counsel was ineffective in failing to request a severance of the felon-in-possession charge. The United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), sets forth the standard of review for ineffective-assistance-of-counsel claims:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. at 687. *See also Price v. State*, 347 Ark. 708, 66 S.W.3d 653 (2002); *Hill v. State*, 347 Ark. 441, 65 S.W.3d 408 (2002). Thus, a defendant must first show that counsel's performance fell below an objective standard of reasonableness and then that counsel's errors actually had an adverse affect on the defense. *Price v. State, supra.* In our review, this court indulges in a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.* The petitioner must show that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt and that the decision reached would have been different absent the errors. *Id.*

We have frequently remarked on the substantial prejudice resulting from the joinder of a felon–in–possession charge to other charges. In *Sutton v. State*, 311 Ark. 435, 844 S.W.2d 350 (1993), this court stated:

> Where a felon/firearm charge is tried with a second felony, the jury is confronted at the opening of the trial with the stark and highly significant fact that the defendant is a convicted felon. The felon/firearm charge generally has no relevance to the second charge being tried and serves only to sully the defendant in the minds of the jurors.

*Id.* at 440, 844 S.W.2d at 353. In light of the prejudice resulting from a joint trial, counsel for Appellant should have requested severance of the felon-in-possession charge. The State suggests that counsel's failure to

sever could be considered a tactical decision, citing *Price v. State, supra*, but the instant case is markedly different from *Price*. In that case, counsel for the defendant filed a severance motion but ultimately abandoned that motion. The defendant argued that trial counsel's failure to pursue the motion amounted to ineffective assistance of counsel, but we disagreed, noting the extensive testimony by defendant's counsel:

> [Counsel] conceded at the hearing on the new-trial motion that if he had pursued the motion for severance, it would have been granted. However, he also testified that the reason why he did not pursue the motion was because he discussed the matter with [the defendant] "several times," and they agreed to try the two cases together and "go for it." Moreover, [counsel] stated that they weighed the fact that if the cases were severed, the felon-firearm charge would have been tried first and [the defendant] would have been convicted. This meant that the jury would have learned of this new conviction during the sentencing phase of the second-degree murder trial, and if [the defendant] took the stand during the guilt phase, at that time also by way of impeachment. The new conviction would also have been added to his prior convictions for enhancement purposes. Thus, it was [counsel's] contention that these factors counterbalanced the prejudice arising from a joint trial of the two charges.

*Id.* at 724, 66 S.W.3d at 663. We concluded that counsel's actions were not ineffective because they fell within the category of a tactical decision. *Id.* In contrast, the circuit court in the instant case did not hold a hearing on Appellant's petition for post-conviction relief. Consequently, the record provides no insight as to why Appellant's trial counsel failed to file a motion for severance. Without such evidence in the record, we cannot presume that trial counsel's failure to request severance of the felon-in-possession charge fell within the category of a tactical decision.

Despite recognizing the disadvantage inherent in the joinder of a felon-in-possession charge with other criminal charges, we have often noted that a joint trial of a felon-firearm charge with a second charge does not constitute prejudice in all instances. *Sutton v. State, supra*; *Ferrell v. State*, 305 Ark. 511, 810 S.W.2d 29 (1991). In *Ferrell*, the defendant was charged with first-degree murder and being a felon in possession of a firearm. This court held that despite the error by the trial court in refusing to sever the felon-firearm count from the murder count, prejudice was not shown because "the evidence of murder against the appellant, with three eye witnesses testifying, was

overwhelming." *Id.* at 515, 810 S.W.2d at 31. Additionally, in *Ferrell*, the defendant voluntarily took the stand to testify, thereby subjecting himself to impeachment. *Id.* While Appellant in the instant case did not take the stand to testify, we can affirm the trial court's finding that counsel's failure to request severance was not prejudicial if the evidence against Appellant was overwhelming.

An examination of the record reveals that the evidence of Appellant's guilt was less than "overwhelming." At trial, the following witnesses testified: Tammy Jones, who was dating Appellant at the time of the incident; Wanda and Janet Jones, who were Tammy's sisters; and Bob Paxton, the chief of the police department. Wanda Jones testified that on July 24, 2002, she went to Tammy's house where Appellant was staying. At her sister Tammy's request, Wanda entered the house to pick up Tammy's keys. She went into the house without knocking and had a verbal exchange with Appellant. Wanda testified that she was intoxicated at the time and couldn't really remember what was said, but a statement she signed the night of the incident reported that Appellant said, "Y'all don't go anywhere. I've got something for y'all." Wanda testified that she took Burton's statement to be a threat. She then left the house, walked to Janet's car, and they drove away. At one point in her testimony, Wanda stated that she heard a gunshot as they were driving away. On cross-examination, however, Wanda stated that she never saw Burton with a rifle in his hand, that it was dark, and that it was not uncommon to hear gunshots in the neighborhood. She admitted signing a statement that said, "Albert reached inside and pulled out a rifle from the house. . . . Albert pointed the gun at [us] and shot at us. The bullet hit my car," but she denied that the statement was hers, saying instead that she witnessed her sister Janet's signature on the statement.

Janet Jones testified that she drove Wanda to the house where Appellant was staying and that Wanda went inside the house and was arguing with Appellant when she came out. Janet testified that she could not hear the exchange between Appellant and Wanda, but that she told Wanda to "come on," at which point Wanda returned to the car and they drove away. Janet said that she later noticed a hole in her car and signed the statement witnessed by her sister Wanda. On cross-examination, Janet testified that she did not read the statement before signing it, that she never saw Appellant with a rifle, and that she did not hear the bullet hit the car as she drove off. She also testified that the area had a "reputation of gunshots going off."

Bob Paxton, the local chief of police, testified that he investigated a report lodged on July 24, 2002, about gunshots striking a

vehicle occupied by Janet and Wanda Jones. He stated that upon arriving at the residence, he was informed that Appellant was inside. At first, the police attempted to get Appellant to come to the door by using a PA system, but without success. Then, police officers telephoned Appellant and spoke with him for at least one hour and a half to get him to come out of the residence so they could further investigate the situation. Eventually, Appellant did come out and was taken into custody. Paxton testified that at that point, he went inside the residence and found a 30-30 rifle inside the closet door that smelled as though it had just been fired. On cross-examination, Paxton stated he did not find any spent shell casings during the search of the residence.

Tammy Jones testified on behalf of Appellant, stating that the gun found at the residence was her gun and that a friend had shown her how to shoot the gun earlier that day. She further testified that she did not see Appellant with a gun.

While the evidence summarized above might be sufficient to withstand a substantial-evidence challenge, we cannot say that the proof of Appellant's guilt in the form of circumstantial evidence was overwhelming. First, despite Janet's written statement that "The bullet hit my car," neither Wanda nor Janet testified at trial to actually hearing the alleged shot hit the car. Wanda testified that she heard gunshots, and Janet testified that she *later* found a hole in her car. In fact, both women specifically testified that they were *not* aware that a bullet had hit the car. Additionally, Wanda's testimony was replete with inconsistencies. First she testified that she felt threatened by Mr. Burton's comment, "Y'all don't go anywhere. I've got something for y'all," but later she testified that she did not feel threatened because "I don't think he can whoop me." She also testified repeatedly that she was drunk at the time of the incident and so could not be sure of any of the details. Most notably, Wanda's testimony was even inconsistent regarding whether or not she actually heard a gunshot. Finally, both women testified that it was not uncommon to hear gunshots in the area. In sum, we cannot conclude that there was overwhelming evidence of Appellant's guilt or that the jury's verdict would have been the same absent knowledge of his previous conviction. Thus, we hold that Appellant's trial counsel was deficient in failing to request severance of the felon-in-possession charge from the other criminal charges, and that Appellant suffered prejudice as a result of this failure. The circuit court's decision on this point is reversed.

## II. Sentencing

Appellant's second major point focuses on the propriety of his sentence. Though we reverse and remand for further proceedings because of trial counsel's failure to make a severance motion, we feel constrained to address the sentencing issue raised by Appellant because the same issue is likely to arise again on retrial. Appellant first argues his trial counsel was ineffective in allowing him to be sentenced outside the presumptive sentence range, and then suggests that Ark. Code Ann. § 16-90-804 (Repl. 2006) is unconstitutional because it allows a lighter presumptive sentence when the defendant is sentenced by a judge.

■ Appellant's first argument on sentencing can be summarily dismissed by referencing Ark. Code Ann. § 16-90-803(b)(4), which states, "This section shall not apply when a jury has recommended a sentence to the trial judge." In this case, Appellant's sentence was recommended to the judge by a jury, and thus the presumptive sentence does not apply. Moreover, the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," is not violated in this instance because Appellant's sentence *was* submitted by a jury. Additionally, Appellant does not allege that he was sentenced outside the statutory maximum, and the statutory minimum or maximum ranges for a sentence always override the presumptive sentences. Ark. Code Ann. § 16-90-804(3)(C).

■ Finally, Appellant's equal protection argument has already been addressed by our court in *Pickett v. State*, 321 Ark. 224, 902 S.W.2d 208 (1995). In *Pickett*, the defendant challenged the presumptive sentences as violating the right to a jury trial because, arguably, those defendants who choose to plead guilty and be sentenced by the court would receive a lesser sentence under the presumptive sentencing guidelines than they would receive from a jury under the statutory guidelines. The court stated:

> The argument embraces a basic misunderstanding of the applicable statutes. The sentencing guidelines do not burden the fundamental right to a jury trial because the statutory minimum and maximum ranges for a sentence always override the presumptive sentences. Section 16-90-804(3)(C) provides: "The

statutory minimum or maximum ranges for a particular crime shall govern over a presumptive sentence if the presumptive sentence should fall below or above such ranges." Therefore, the statutes do not allow a judge to sentence a defendant to a fifty-four month sentence when the statutory minimum is ten years, as in this case.

*Id.* at 226, 902 S.W.2d at 209. Similarly here, Appellant's equal protection argument has no merit because, in no instance, whether the sentence is imposed by judge or jury, can a defendant be sentenced outside the statutory range. Thus, in the absence of an equal protection violation, trial counsel's performance was not deficient in connection with the sentence imposed.

Reversed and remanded.

DICKEY and GUNTER, JJ., dissent.

JIM GUNTER, Justice, dissenting. I respectfully dissent. The majority points out that under *Strickland v. Washington,* 466 U.S. 668 (1984), a defendant must prove first that his attorney's performance fell below an objective standard of reasonableness and next that the counsel's performance actually had an adverse affect on the defense. *Price v. State,* 347 Ark. 708, 66 S.W.3d 653 (2002).

Further, the majority points out that this court indulges a strong presumption that counsel's conduct fell within the wide range of professional assistance. *Id.* Also, the defendant has the burden of overcoming that presumption by identifying acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.*

Here, no proof was offered by appellant, and no hearing was had. Rather than have the court rule that the strong presumption that counsel's performance falls to the court's prior holding that failure to sever is presumed ineffective assistance, I would remand for a hearing.

Here, the majority holds up its own presumption of ineffective assistance to the detriment of the strong presumption that counsel's performance fit within a wide range of proper professional assistance. At most, this court should remand for a hearing on the issue. To do otherwise constitutes an apparent trend toward driving attorneys away from the practice of criminal law.

DICKEY, J., joins.

## SUPPLEMENTAL DISSENTING OPINION
## ON DENIAL OF REHEARING
## SEPTEMBER 21, 2006

JIM GUNTER, Justice, dissenting. I would grant the petition for rehearing. By the June 29, 2006, opinion of this court, we have overlooked our own precedent.

We have held an attorney's conduct is presumed to be within a wide range of reasonable professional conduct. *Johnson v. State*, 321 Ark. 117, 900 S.W.2d 940 (1995). Further, we have held that the Rule 37 petitioner has the burden to overcome the presumption of the attorney's competency. *Seek v. State*, 330 Ark. 833, 836, 957 S.W.2d 709, 711 (1997). To overcome this presumption, the Rule 37 petitioner must prove both deficient performance and prejudice resulting from the deficient performance. *See State v. Daniel*, 338 Ark. 571, 575, 998 S.W.2d 750, 753 (1999). By presuming deficiency instead of competence, our June 26, 2006 opinion contradicts this settled law.

We should grant rehearing to consider aligning our decision with our own precedent.

DICKEY, J., joins this opinion.