



# SUPREME COURT OF ARKANSAS

No. CR-12-655

| | |
|---|---|
| STEVEN VICTOR WERTZ<br><div align="right">APPELLANT</div> | **Opinion Delivered** May 22, 2014 |
| V. | APPEAL FROM THE SHARP COUNTY CIRCUIT COURT [NO. CR-2006-75] |
| STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | HONORABLE HAROLD S. ERWIN, JUDGE |
| | AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

On July 19, 2007, a Sharp County jury convicted appellant, Steven Victor Wertz, of two counts of capital murder and sentenced him to death. We affirmed his conviction and sentence in *Wertz v. State*, 374 Ark. 256, 287 S.W.3d 528 (2008). The relevant facts as we recounted in Wertz's direct appeal are as follows:

> On the morning of December 31, 1986, Kathy and Terry Watts were found dead in their Ash Flat home by Kathy's mother, Judy Bone. Ms. Bone found their almost one-year-old son, alive, near his father's body. During the investigation into the Wattses' deaths, it was discovered that a child-custody matter regarding another child was ongoing between Terry Watts and Wertz's then-wife, Belinda. Ultimately, Wertz became the primary suspect, and, the same day that the bodies were discovered, investigators traveled to Oklahoma, where the Wertzes resided, to inquire.

> At that time, Wertz told investigators that he and Jamie Snyder, Jr., the son of a friend, spent the night at Wertz's home on December 30, 1986. Wertz claimed that he had been sick that evening and that he had gone to the Tinker Air Force Base clinic the next day for treatment, which records corroborated. It appears from the record that, despite having suspects, police neither arrested nor charged anyone in connection with the murders until much later.

SLIP OPINION

In spring 2001, David Huffmaster of the Sharp County Sheriff's Department began to review the case file on the Wattses' murders after being contacted by Kathy Watts's sister, Chris Lindner, at a school function. In spring 2002, Huffmaster essentially reopened the case and, over the course of the next few years, conducted interviews of some of the persons previously interviewed and involved in the original investigation. Huffmaster's interviews of both Belinda Stewart, who had been married to Wertz at the time of the crimes, but had since divorced him and remarried, and Jamie Snyder, Jr., yielded statements that led to an arrest warrant being issued for Wertz on April 27, 2006. On April 28, 2006, a felony information was filed, charging Wertz with two counts of capital murder.

*Id.* at 258–59, 287 S.W.3d at 530-33.

On January 16, 2009, Wertz filed his Rule 37.5 petition in the Sharp County Circuit Court alleging that his retained trial counsel's, Greg Bryant's, performance was constitutionally deficient and asserting twenty-three allegations of ineffective assistance of counsel. On April 9-10, 2012, the circuit court conducted a hearing. On May 17, 2012, the circuit court denied Wertz's petition. Wertz now brings this appeal and presents two issues for review: (1) the circuit court erred in denying Wertz's Rule 37 petition because Wertz received ineffective assistance of counsel in the guilt phase of his trial; and (2) the circuit court erred in denying Wertz's Rule 37 petition because Wertz received ineffective assistance of counsel in the sentencing phase of his trial.

"On appeal from a circuit court's ruling on a petitioner's request for Rule 37 relief, this court will not reverse the circuit court's decision granting or denying post-conviction relief unless it is clearly erroneous. *E.g.*, *Prater v. State*, 2012 Ark. 164, at 8, 402 S.W.3d 68, 74. A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*, 402 S.W.3d at 74." *Mason v. State*, 2013 Ark. 492, at 1–2, ___

SLIP OPINION

S.W.3d \_\_\_, \_\_\_.

Our standard of review requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). Claims of ineffective assistance of counsel are reviewed under the following standard:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable.

*Burton v. State*, 367 Ark. 109, 111, 238 S.W.3d 111, 113 (2006) (quoting *Strickland*, 466 U.S. at 687).

The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* The petitioner claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *See id.* Therefore, Wertz must first show that counsel's performance fell below an objective standard of reasonableness and then that counsel's errors actually had an adverse effect on the defense. *Id.* Wertz must satisfy both prongs of the test, and it is not necessary to determine whether counsel was deficient if Wertz fails to demonstrate prejudice as to an alleged error. *Kelley v. State*,

3

2011 Ark. 54, ___ S.W.3d ___.

Further, with respect to an ineffective-assistance-of-counsel claim regarding the decision of trial counsel to call a witness, such matters are generally trial strategy and outside the purview of Rule 37.1. *Banks v. State*, 2013 Ark. 147. Where a petitioner alleges ineffective assistance of counsel concerning the failure to call witnesses, it is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. *Moten v. State*, 2013 Ark. 503 (per curiam). In order to demonstrate prejudice, the petitioner is required to establish that there was a reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. *Hickey v. State*, 2013 Ark. 237, ___ S.W.3d ___. Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to the client. *Id*. Nonetheless, such strategic decisions must still be supported by reasonable professional judgment. *Id*. Finally, "[w]hen assessing an attorney's decision not to call a particular witness, it must be taken into account that the decision is largely a matter of professional judgment which experienced advocates could endlessly debate, and the fact that there was a witness or witnesses that could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness. *Huls v. State*, [301 Ark. 572, 785 S.W.2d 467 (1990)]; *Dumond v. State*, 294 Ark. 379, 743 S.W.2d 779 (1988)." *Johnson v. State*, 325 Ark. 44, 49, 924 S.W.2d 233, 236 (1996).

*Points on Appeal*

I. *Ineffective Assistance of Counsel: Guilt Phase*

4

For his first point on appeal, Wertz makes several arguments regarding ineffective assistance of counsel at the guilt phase. Specifically, Wertz asserts that Bryant should not have worked alone, but should have retained a second attorney to assistance him in handling Wertz's case as prescribed by the American Bar Association (hereinafter ABA) guidelines. Further, Wertz asserts that Bryant took $35,000 from Wertz that was intended for the express use of hiring a second attorney, Jeff Rosenzweig. Wertz contends that because Bryant failed to retain co-counsel and failed to retain necessary services, Bryant was constitutionally deficient on seven subpoints:

1. Bryant failed to review the physical evidence held by the State.

2. Bryant failed to retain a forensic investigator to review the physical evidence.

3. Bryant failed to retain and have a forensic pathologist to review the autopsy results.

4. Bryant failed to properly prepare and present evidence on the "time and distance" argument.

5. Bryant failed to investigate Wertz's contention that the footprint on the door of the home was too small to be Wertz's shoe.

6. Bryant failed to interview the following witnesses who had knowledge relevant to Wertz's defense: Mark Sealey (crime scene technician), Jeff Qualls (Sharp County coroner at the time of the murders), Jamie Snyder's ex wife, and countless individuals Wertz knew over his lifetime who should have been called.

7. Bryant failed to spend sufficient time with Wertz to prepare him to testify at trial and enable him to understand the nature of the trial process.

*Pretrial Investigation*

Wertz's first three subpoints assert that Bryant's pretrial investigation was deficient. First, Bryant did not properly investigate the physical evidence. Second, Bryant did not hire

a forensic investigator to examine the physical evidence including the shotgun, the shoe print, the victim's front door, shot gun shells, and the shot gun pattern on the front door. Third, Bryant did not retain a forensic pathologist to review the autopsy reports. Wertz asserts that because Bryant did not perform an adequate investigation including retaining forensic experts, Wertz was prejudiced. The State responds that Wertz has failed to demonstrate that Bryant's representation was deficient and asserts that Wertz's claims are conclusory.

In reviewing an assertion of ineffective assistance of counsel based on failure to investigate, a petitioner must describe how a more searching pretrial investigation would have changed the results of his trial. *Fernandez v. State*, 2011 Ark. 418, 384 S.W.3d 520. There is a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance, and the burden is entirely on the claimant to provide facts that affirmatively support his claims of prejudice. *Shipman v. State*, 2010 Ark. 499 (per curiam). Neither conclusory statements nor allegations without factual substantiation are sufficient to overcome the presumption and cannot provide a basis of postconviction relief. *Id*. General assertions that counsel did not aggressively prepare for trial are not sufficient to establish an ineffective-assistance-of-counsel claim. *Id*.

We now turn to the circuit court's order denying Wertz's claim regarding Bryant's pre-trial investigation. The circuit court's order stated:

> The court finds this allegation [of lack of investigation] is a conclusory statement by petitioner and as such, cannot be the basis of postconviction relief. *Sparkman v. State*, 373 Ark. 45, 281 S.W.3d 277 ( 2008). There was testimony petitioner spent time with the lead investigator going over evidence in Sharp County as well as having evidence reviewed by the State Crime Lab.

. . . .

Petitioner is making conclusory statements without offering any proof and as such, cannot be the basis of post-conviction relief. *Sparkman*, supra. Petitioner's allegations here are highly questionable, even assuming such an analysis was possible. Petitioner claims an expert should have been retained to test a shotgun ( which was found in 1987), which no longer existed at the time of petitioner's arrest.

. . . .

Petitioner has asserted that defense counsel failed to procure an independent medical examiner to rebut the testimony of Dr. Charles Kokes concerning lividity and time of death of Kathy Watts. This allegation is conclusory and not supported by any proof demonstrating that an independent medical examiner would have rebutted the testimony of Dr. Kokes or how the proceedings would have been different had such a witness been called. As such, this allegation fails and cannot be the basis for post-conviction relief. *Sparkman*, *supra*.

Here, Wertz contends the circuit court erred and claims that had Bryant retained these forensic experts, Bryant would have discovered exculpatory evidence.

However, the record demonstrates that Wertz made only general assertions that do not provide sufficient factual substantiation for his claims of prejudice. Wertz has made conclusory allegations and has failed to demonstrate that a more searching investigation would have changed the results of his trial. In reviewing the circuit court's order, we find no error as to this claim.

*"Time and Distance" Defense*

Wertz's fourth subpoint of error during the guilt phase alleges that Bryant rendered ineffective assistance of counsel when Bryant failed to present evidence of an alternative "time and distance" argument that would demonstrate the physical impossibility that he committed the crimes. Wertz contends that Bryant performed a "shoddy investigation" and failed to adequately investigate the route, weather conditions, and vehicle driven from Guthrie,

Oklahoma to Ash Flat, Arkansas. Further, Wertz contends that if Bryant had been properly prepared for trial, Bryant would have been able to demonstrate that the trip could not have taken place during the time frame the State asserted and that the State's timeline and Wertz's co-defendant's, Snyder's, timeline were inconsistent.

The State responds that the circuit court should be affirmed because Bryant reasonably presented evidence of Wertz's "time and distance" defense as well as through the cross-examination of multiple witnesses and his own witnesses.

In denying Wertz's claim, the circuit court held that

> [t]he weather conditions on or about the time of the murders was in evidence at trial. Bryant, while not having a representative from the actual car manufacturer, put on testimony that the one-way trip from Oklahoma to Ash Flat trip took two tanks of gasoline. Consequently, the court further finds Bryant acted reasonably in the interviews and made reasonable efforts in attempting to locate and interview witnesses whose testimony was potentially exculpatory.

Wertz asserts that the circuit court erred. To prevail, Wertz must describe how a more searching pretrial investigation would have changed the results of his trial. *Fernandez v. State*, 2011 Ark. 418, 384 S.W.3d 520. Here, the record demonstrates that Bryant cross-examined the following witnesses about the time of death of the victims which went to discredit the State's timeline: Arkansas State Police Sergeant Steve Huddleston, former Sharp County Chief Deputy Dennis Burton, and Joe Stidman, a reserve officer with the Sharp County Sheriff's Office. Huddleston, Burton, and Stidman all testified regarding their involvement in the investigation, the Polaroid pictures of the crime scene, and the arrival time of Mark Sealey, the medical examiner technician, who came to retrieve the bodies. Additionally, Dr. Charles Kokes testified about the estimated time of death and the Polaroid pictures that were taken

at the scene. Bryant cross-examined each of these witnesses regarding the timeline that Wertz argues was not adequately addressed at trial. Additionally, Bryant presented his own witness, Tyson Spradlin, his associate and assistant, regarding the time it took to travel from Ash Flat, Arkansas, to Guthrie, Oklahoma. Spradlin testified about the make and model of his car, the gas used, the fastest route, and the time it took him to travel. Accordingly, Bryant put evidence before the jury refuting the State's timeline of the case. Based on our standard of review, we cannot say the circuit court clearly erred.

*Boot/Footprint*

For his fifth subpoint of error alleging ineffective assistance of counsel during the guilt phase of the trial, Wertz asserts that Bryant was ineffective for failing to investigate that the footprint on the Wattses's door used in the State's prosecution could not have been his footprint because it was too small and the pattern did not match the soles of his boots. The circuit court held that

> [t]he allegation of deficient conduct by not calling an expert with regard to a shoe print not matching the size of petitioner fails because the circumstances regarding the evidence was before the jury.

At trial, during his cross-examination of Huffmaster, Wertz established that he wore a size 13 shoe and the footprint found was a size 9. Here, the record from the Rule 37 hearing demonstrates that Wertz has failed to present evidence to support his claim and that he makes conclusory allegations. In reviewing the circuit court's ruling on this claim, we find no error.

*Failure to Interview Witnesses*

9

SLIP OPINION

Wertz's sixth subpoint of error in the guilt phase is that he received ineffective assistance of counsel when Bryant failed to present the following witnesses: Mark Sealey, Jeff Qualls, Jamie Snyder's ex-wife (the accomplice's ex-wife), and countless individuals whom Wertz knew. The circuit court denied Wertz's argument on this point and held,

> According to the testimony at the evidentiary hearing, Bryant was not able to locate Mark Sealey, however, the substance of his testimony regarding his opinion as to time of death was put before the jury. Additional testimony concerning the coroner's report was also presented at the evidentiary hearing, however, the report corroborated Dr. Kokes' estimated time of death.
> . . .
> Petitioner alleges that trial counsel failed to adequately investigate the physical evidence held by the State of Arkansas, theorizing that an adequate investigation would have disclosed that items of physical evidence were exculpatory to the guilt of petitioner and that physical evidence could have been used by defense counsel to attack the credibility of the State's chief investigator, the alleged accomplice James Snyder, Jr. and petitioner's ex-wife, Belinda Wertz, whose testimony was adverse to petitioner. The court finds this allegation is a conclusory statement by petitioner and as such, cannot be the basis of postconviction relief. *Sparkman v. State*, 373 Ark. 45, 281 S. W.3d 277 (2008). There was testimony petitioner spent time with the lead investigator going over evidence in Sharp County as well as having evidence reviewed by the State Crime Lab.

In reviewing this claim, "[i]t is incumbent on . . . [Wertz] . . . to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence." *Shipman*, 2010 Ark. 499, at___, ___ S.W.3d ___, ___. In order to demonstrate prejudice, Wertz was required to establish that there was a reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. *Hickey*, 2013 Ark. 237, ___ S.W.3d ___. At the Rule 37 hearing, Wertz did not call any of these witnesses or submit affidavits with their testimony. Thus, Wertz asserts no more than conclusory statements in this regard, and

we affirm the circuit court on this claim.

*Failure to Prepare Wertz*

For his final allegation of ineffective assistance of counsel at the guilt phase, Wertz claims that Bryant failed to spend sufficient time with Wertz to prepare him to testify and enable him to understand the trial process. An attorney's advice to his or her client is not grounds for an ineffective-assistance-of-counsel claim. Whether a defendant testifies is not a basis for postconviction relief. *Dansby v. State*, 347 Ark. 674, 679, 66 S.W.3d 585, 588 (2002). Further, the accused has the right to choose whether to testify on his own behalf. *Chenowith v. State*, 341 Ark. 722, 19 S.W.3d 612 (2000) (per curiam). Counsel may only advise the accused in making the decision, and the decision to testify is purely one of strategy. *Id.* Therefore, we affirm the denial of Wertz's claim on this point.

Based on the discussion above, we do not find that the circuit court erred. Wertz did not provide support for his conclusory claims that counsel was ineffective. Likewise, there has been no showing that Bryant committed any specific error that prejudiced the defense because Wertz did not specify with facts how the defense was prejudiced. As discussed *infra*, based on *Strickland*, Wertz must show that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt and that the decision reached would have been different absent the errors. In reviewing the record before us and Wertz's argument, we are unpersuaded that Wertz has met his burden, and we affirm the circuit court's denial of this claim.

II. *Ineffective Assistance of Counsel: Sentencing Phase*

For his second point on appeal, Wertz contends that the circuit court erred when it denied Wertz's claim that he received ineffective assistance of counsel during the sentencing phase of his trial because Bryant did not adequately investigate and present mitigation evidence. Citing *Strickland v. Washington*, 466 U.S. 668 (1984); *Sanford v. State*, 342 Ark. 22, 25 S.W.3d 414 (2000); and *Wiggins v. Smith*, 539 U.S. 510 (2003), Wertz asserts that Bryant had an absolute duty to fully investigate all possible mitigating circumstances despite Wertz's instructions. Wertz contends that this failure to investigate fulfills both prongs of *Strickland* – deficient performance and prejudice – and urges this court to reverse the circuit court.

The State responds that Wertz mischaracterizes Bryant's performance and testimony at the Rule 37 hearing, as Bryant did investigate and present mitigation evidence. Further, the State responds that Wertz's argument is without merit because the record demonstrates that Wertz specifically instructed Bryant to not investigate and present mitigation evidence. Finally, the State asserts that we should affirm the circuit court because Wertz has failed to demonstrate prejudice.

In reviewing an assertion of ineffective assistance of counsel for the failure to call a certain witness, the objective is to determine whether the failure resulted in actual prejudice that denied the petitioner a fair trial. *Moten v. State*, 2013 Ark. 503 (per curiam). The decision to call or not to call a particular witness is largely a matter of professional judgment. The fact that there was a witness or witnesses who could have offered beneficial testimony is not, in itself, proof of counsel's ineffectiveness. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000). Further, in reviewing an assertion of ineffective assistance of counsel based on counsel's failure

to investigate and present mitigation evidence, the failure to conduct any investigation will not pass the constitutional standard we require; however, reasonable strategic choices do not rise to the level of satisfying *Strickland*. *See Sanford v. State*, 342 Ark. 22, 25 S.W.3d 414 (2000). In *Sanford* we held that, the attorney's "failure to investigate caused the jury not to have before it all the available significant mitigating evidence" and further held that such failure raised "a reasonable probability that the result of the sentencing proceeding would have been different if competent counsel had presented and explained the significance of all the available evidence." *Id*. 342 at 34, 25 S.W.3d at 422 (citing *Williams v. Taylor*, 529 U.S. 362 (2000)).

Finally, in order to satisfy *Strickland*, Wertz must meet both prongs, deficient performance and prejudice. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *See Stiggers v. State*, 2014 Ark. 184, ___ S.W.3d ___ (internal citations omitted). Prejudice must be established by demonstrating that there is reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. With these standards in mind, we turn to the circuit court's order and its denial of Wertz's claim on his second point:

> Petitioner alleges Bryant failed to interview witnesses who could have provided mitigating evidence for the petitioner at the punishment stage of the trial. As stated by the court in the court's Findings of Facts and Conclusions of Law 3 above, the court finds that Bryant may have been deficient in his representation of his client in the mitigation stage of his trial by not calling at least one other witness, not a family member, who could have testified as to a good trait of petitioner. The court finds that this omission did not prejudice the petitioner to the extent that the decision reached by the jury would have been different.

SLIP OPINION

To review the circuit court's order and correctly determine this issue, we must look at all the evidence adduced at trial and at the Rule 37 hearing. *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24.

At trial, during the sentencing phase, Bryant presented two mitigation witnesses: Steve Huddleston and Wertz's wife, Judy Wertz. First, Huddleston testified that Wertz may not have known that the victims' one-year old baby was in the house at the time of the murders, in an attempt to convince jurors that one of the aggravators had not been met. Second, Bryant called Judy and she testified regarding their courtship; that Wertz married her as she had been a widow; and Wertz was religious, was a hard worker, treated people personally and professionally with respect, provided a stable and loving home, was a grandfather to her three grandchildren who lived next door to them in Florida, and was interested in music.

At the Rule 37 hearing, Bryant testified that Wertz did not give him names of individuals to call as mitigation witnesses and was not forthcoming with personal information or his life history. Bryant further testified that through his handling of the case, he discovered friends and co-workers of Wertz's, but assessed that none of them would have provided favorable testimony for Wertz. Additionally, Bryant testified that he contacted Wertz's children. Wertz's son was not willing to testify on Wertz's behalf and Wertz's daughter attended the trial, but once she arrived she changed her mind and was not interested in testifying on his behalf. Bryant also stated that Wertz's brother would not have been favorable on Wertz's behalf. Further, Judy Wertz's daughter was not willing to testify on Wertz's behalf. Finally, Bryant testified that Wertz instructed Bryant to not investigate or present

14

mitigation evidence and also that Wertz did not want to take the stand in either the guilt or the sentencing phase.[1] Bryant also testified that Wertz had told Bryant he would rather be executed than spend the remainder of his life in jail.

Also at the Rule 37 hearing, Wertz testified that he did not instruct Bryant to not put on or investigate mitigation evidence and also testified that Bryant never explained the mitigation process to him. Wertz further testified that Bryant did not keep him informed. Judy testified that she understood that Rosenzweig was going to handle the mitigation but

---

[1]We note that Wertz's waiver is contained in the trial record:

| DEFENSE COUNSEL: | Judge, there are two things I want to put on the record. The first one is that early on into this – my representation of Mr. Wertz he instructed me not to conduct a mitigation investigation. And I don't think it's necessary that I go on record as to the reasons why. |
| --- | --- |
| THE COURT: | It's up to him. |
| MR. BRYANT: | He instructed me not to go into any mitigating events anyway but there – as opposed to an investigation which --that encompasses the whole different matter and the other thing, Your Honor is that Mr. Wertz, both at the guilt phase and now at the penalty phase has decided not to take the witness stand. |
| THE COURT: | Is that correct? |
| DEFENDANT: | Sir, what? |
| THE COURT: | Is that correct? |
| DEFENDANT: | Yes. |



was not aware that there were two different phases at trial.

Additionally, at the Rule 37 hearing, in addition to the two mitigation witnesses at trial, Wertz presented testimony from three additional witnesses: Ed Briggs, Stacy Worthington Chism, and Teri Chambers. First, Briggs testified that he had known Wertz for over thirty years, that the two had met in Vietnam, and that Briggs relied on Wertz in the field in Vietnam. Briggs also testified to a story about Wertz protecting a child and making sure he was safe after an ambush. Several years later, the two were both employed as police officers together, and Briggs testified about Wertz having helped him and fellow officers on the scene of a traffic stop when he called for assistance.

Second, Chism testified that she was a mitigation specialist with the Arkansas Public Defender's Commission and, in preparation for Wertz's Rule 37 hearing, investigated Wertz's history. She testified regarding the investigation that she would have performed at trial including but not limited to, family history, Wertz's first wife, Wertz's children, military experience, work history, mental retardation, psychological evaluation, school history, former teachers, and photos of his family history. Chism also testified regarding photos she had discovered during her investigation including, but not limited to, Wertz as a child, Wertz with his children, Wertz with his first wife, Wertz in Vietnam, Wertz with his current wife, Judy, and newspaper clippings from when Wertz was a swimmer in high school. The photos were introduced into evidence.

Third, Chambers, an attorney with the Arkansas Public Defender Commission, Capital Conflicts Office, testified as to the ABA Guidelines regarding the investigation of mitigation

evidence. She testified about the importance of investigating a defendant's history and presenting that information to the jury.

Turning to Wertz's argument on appeal, Wertz asserts that his case is analogous to *Sanford*, alleges that Bryant abdicated his duty to investigate, and argues that the outcome would have been different if the jury had been fully informed of the various mitigating factors. However, this argument is flawed for two reasons. First, unlike the record in *Sanford*, the record in this case demonstrates that Bryant presented some mitigation evidence. In *Sanford*, at the Rule 37 hearing, Sanford's counsel

> largely conceded that he did little in putting on proof of mitigation during the penalty phase, and that the reasons may have been because he was 'quite disappointed' in the jury's guilty verdicts, and 'he was tired.' In fact, while he was well aware that, during the penalty phase, the prosecutor painted Sanford as a remorseless, heartless, cold-blooded person, [Sanford's counsel] guessed "he did not do anything" to counter the State's presentation in the penalty phase. Moreover, when asked by the trial court if he intended to ask for AMCI 1009—the capital murder, mitigation instruction based on mental retardation—Howard responded, 'Yes, Your Honor, I had not even . . . thought about it, but I am quite sure I am going to offer that.'
>
> . . . .
>
> From the colloquy between the trial court and counsel, it became obvious that, although he could have offered additional evidence at the penalty stage, [Sanford's counsel] had made no plans to offer any more evidence except the testimony of Sanford's parents.
> . . . .
>
> [Sanford's counsel] admitted he made no effort to obtain Sanford's school records, jail records, medical records, or family history. While he had a social worker available to him, Howard never considered asking the worker to assist him in developing mitigation.

*Id.*, at 32, 25 S.W.3d at 421.

Here, Bryant did present mitigation evidence. Accordingly, Wertz's case is

17



distinguishable from the *Sanford* case.

Second, we do not find Wertz's case analogous to *Sanford* because at Wertz's Rule 37 hearing, Wertz failed to present potential mitigation evidence that would have likely caused the jury to reach a different result. At the Rule 37 in *Sanford*, extensive mitigation evidence was presented that had been omitted from Sanford's trial:

> Sanford's school records showed Sanford had been in special education, and had been considered mildly mentally retarded during much of his time in school. Sanford was shown to have a good record with only one disciplinary incident. His medical history reflects he almost suffocated to death as a child when a load of cotton seed fell on him; Sanford's mother opined Sanford acted a "bit slower" after the cotton-seed incident. Later he suffered a blow to the head with a two-by-four wielded by his sister. Proof also available, but not investigated by [Sanford's counsel], showed siblings and other family members to be either slow or retarded.

*Id.*, 342 at 33, 25 S.W.3d at 421.

In contrast, at Wertz's Rule 37 hearing, little potential mitigating testimony was presented. Wertz presented three mitigation witnesses that did not testify at the first trial, Briggs, Chism and Chambers, and the record fails to demonstrate that there was a reasonable probability that the jury would have reached a different result based on this Rule 37 testimony. Briggs stated that he would have testified regarding his relationship with Wertz, Wertz's military service, and redeeming personal qualities through personal stories. However, the record also demonstrates that Wertz had lied about military service and recognition, even forging military records, and if Briggs had testified, then the State would have been able to cross-examine him about Wertz's dishonesty.

Further, although Chism testified about how she would conduct her mitigation investigation and the evidence she had discovered about Wertz, including the introduced

18

photos, this testimony did not amount to specific mitigation evidence demonstrating that Wertz was prejudiced.[2] Chism testified regarding the family history, the cousins, the work history, and the "50 years of life that were not covered by the testimony of Judy Wertz" but did not present any specific evidence that would likely change the outcome. Finally, Chambers did not provide any testimony specific to Wertz; rather, she only discussed the ABA guidelines and the investigation that should have been conducted.

Here, this is not a situation where counsel *totally* failed to investigate and put forth mitigation evidence as in *Sanford*. Bryant produced two mitigation witnesses who testified about Wertz's general good character, his work ethic, his love for and involvement with his family, and the fact that Wertz was not aware that the victims's one-year old son was at the scene when the murders took place. Also, despite whether counsel was deficient on investigating and presenting sufficient mitigation, Wertz's case is distinguishable from Sanford's case because, Wertz has failed to present specific evidence to demonstrate prejudice arose and demonstrate a reasonable probability that the information uncovered with further investigation would have changed the outcome.

We next turn to *Williams v. Taylor*, 529 U.S. 362 (2000), which the *Sanford* decision relied heavily upon. Wertz's case is also distinguishable from *Williams*. In *Williams*, the evidence was much more substantial than in the present case:

---

[2]At the Rule 37 hearing, the State introduced a psychologist's report as the witness was ill and unable to attend the hearing. The report provided that Wertz did not display any significant psychiatric symptoms, including PTSD. The report also stated that Wertz had no previous history for any significant psychiatric impairments. Finally, the report stated that Wertz would likely not make a good witness on his own behalf.

Existing documents in Williams dramatically described mistreatment, abuse, and neglect during [the appellant's] early childhood, as well as testimony that he was 'borderline mentally retarded,' had suffered repeated head injuries, and might have mental impairments organic in origin. Other omitted evidence showed that the appellant did not advance beyond sixth grade in school, his parents had been imprisoned for the criminal neglect of the appellant and his siblings, he had been severely and repeatedly beaten by his father, he was in the custody of the social services bureau for two years during which he had a stint in an abusive foster home, and he was returned to the custody of his parents after they were released from prison. In addition, the appellant had received commendations in prison for helping to crack a prison drug ring and for returning a guard's missing wallet, and prison guards were willing to testify that he was among the inmates least likely to act in a violent or dangerous way.

*Williams v. State*, 347 Ark. 371, 379, 64 S.W.3d 709, 716 (citing *Williams v. Taylor*, 529 U.S. at 370).

Also, in support of his claim, Wertz refers us to the United States Supreme Court's decision in *Wiggins v. Smith*, 539 U.S. 510 (2003). However, Wertz's case is also distinguishable from *Wiggins*. In *Wiggins*, the mitigating evidence counsel failed to discover was "powerful":

Wiggins experienced severe privation and abuse in the first six years of his life while in the custody of his alcoholic, absentee mother. He suffered physical torment, sexual molestation, and repeated rape during his subsequent years in foster care. The time Wiggins spent homeless, along with his diminished mental capacities, further augment his mitigation case.

*Wiggins*, 539 U.S. at 534.

The Supreme Court held that "[g]iven both the nature and the extent of the abuse petitioner suffered, we find there to be a reasonable probability that a competent attorney, aware of this history, would have introduced it at sentencing in an admissible form." *Id.* at 535.

Having reviewed Wertz's ineffective-assistance-of-counsel claim regarding the investigation of mitigation evidence, we find no merit in Wertz's argument. Wertz contends,

20

with no factual substantiation, the outcome would have been different if Bryant had investigated and presented mitigation evidence. "When a defendant challenges a death sentence, the question is whether there is a reasonable probability that, absent the errors, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Hill v. Lockhart*, 28 F.3d 832 (8th Cir. 1994) (citing *Strickland v. Washington, supra* )." *Williams v. State*, 347 Ark. 371, 379, 64 S.W.3d 709, 716. Wertz has failed to meet this burden, and based on our standard of review, we find no error and affirm.

Affirmed.

Special Justice ANDREW FULKERSON and HART, J., concur in part and dissent in part.

GOODSON, J., not participating.

**ANDREW FULKERSON, Special Justice, concurring in part and dissenting in part.** I concur with the majority's conclusion that appellant, Steven Victor Wertz, did not receive ineffective assistance of counsel during the guilt phase of his trial. However, I would hold that Wertz received ineffective assistance of counsel during sentencing, In appeals of post-conviction proceedings, we will not reverse unless a circuit court's decision is clearly erroneous. *State v. Barrett*, 371 Ark. 91, 95, 263 S.W.3d 542 546 (2007). The circuit court's conclusion that Wertz waived the mitigation investigation and defense is clearly erroneous. Therefore, I respectfully dissent.

In *Coulter v. State*, this court observed:

The constitutional guarantee of effective assistance of counsel extends to the sentencing phase of the defendant's trial. Counsel's failure to investigate and present substantial mitigating evidence during the sentencing phase may constitute ineffective assistance of counsel. Counsel is obligated to conduct an investigation for the purpose of ascertaining

21

mitigating evidence, and the failure to do so is error. Such error, however, does not automatically require reversal unless it is shown that, but for counsel's errors, there is a reasonable probability that the sentence would have been different. When reviewing a claim of ineffectiveness based upon failing to present adequate mitigating evidence, we must view the totality of the evidence—both that adduced at trial and that adduced in the postconviction proceeding.

343 Ark. 22, 29, 31 S.W.3d 826, 830 (2000) (internal citations omitted). While the decision not to investigate or present mitigating evidence can be considered a matter of trial tactics or strategy, "a 'total abdication of duty' to prepare a mitigation case 'should never be viewed as permissible trial strategy.'" *Sanford v. State*, 342 Ark. 22, 31, 25 S.W.3d 414, 420 (2000) (quoting *Pickens v. Lockhart*, 714 F.2d 1455 (8th Cir. 1983)). In *Sanford*, again quoting from *Pickens*, the court stated:

> The lawyer also has a substantial and important role to perform in raising mitigating factors both to the prosecutor initially and to the court at sentencing. *This cannot effectively be done on the basis of broad general emotional appeals* or on the strength of statements made to the lawyer by the defendant. Information concerning the defendant's background, education, employment record, mental and emotional stability, family relationships, and the like, will be relevant, as will mitigating circumstances surrounding the commission of the offense itself. *Investigation is essential* to fulfillment of these functions.

*Id*. at 33–34, 25 S.W.3d at 422.

Stacy Worthington Chism, a mitigation specialist for the Arkansas Public Defender Commission, testified during the Rule 37 hearing and described the mitigation evidence that she was able to assemble on behalf of Wertz. This included documents and photographs from childhood, his baby book, school records, swim-team medals and newspaper clippings, certificates related to his career as a law enforcement officer, and photographs of Wertz with his children and his grandchildren. None of this evidence was offered during the sentencing phase of his trial. Chism testified that "[t]he main objective in a sentencing phase is you tell the

life story of the defendant. What you are doing is trying to save his life by humanizing him."

The majority, addressing only the prejudice prong of *Strickland*, concludes that "although Chism testified about how she would conduct her mitigation investigation and the evidence she had discovered about Wertz . . . this testimony did not amount to specific mitigation evidence demonstrating that Wertz was prejudiced." This conclusion, however, entirely misses the point. As this court stated in *Sanford*, information concerning the defendant's background, education, employment record, mental and emotional stability, family relationships, and the like, will be relevant. The evidence demonstrated prejudice by showing what an effective attorney would have investigated and presented to humanize Wertz to the jury.

In this case, based on the limited mitigating evidence presented, which defense counsel purportedly offered against Wertz's wishes, *the jury did not find any mitigating circumstances*. The clear import of Chism's evidence would have been to humanize Wertz to the jury. The effective use of mitigation evidence is all the more important in a state such as Arkansas in which it takes only one juror to be touched by one or more mitigating factors and change a sentence from death to life without the possibility of parole. The very limited mitigation evidence offered at Wertz's trial was far from what, as decidedly shown by Chism's testimony, could have been discovered and offered. A thorough and proper mitigation investigation such as that described by Chism could have done much to "humanize" Wertz in the eyes of the jury. It is important to recognize that, but for defense counsel's failure to investigate, there is a reasonable possibility that a mitigating circumstance would have been found and that a single

juror would have chosen life. It may have been a valid, strategic decision to not call a witness who trial counsel believed would be unhelpful. The voluminous mitigating evidence collected by Mitigation Specialist Stacy Worthington Chism could have been offered through virtually any witness (Mrs. Wertz, for example, who did read a prepared statement during the sentencing phase), as the Rules of Evidence do not apply to admission of mitigating circumstances. Ark. Code Ann. § 5-4-602(4)(B)(i) (Repl. 2013). After a finding by the jury of aggravating circumstances, the failure to have presented any meaningful mitigating circumstances makes the death penalty all but inevitable.

The evidence demonstrated that defense counsel's performance was deficient. The United States Supreme Court has emphasized that "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing," and does not "require defense counsel to present mitigating evidence at sentencing in every case." *Wiggins v. Smith*, 539 U.S. 510, 533 (2003). Nevertheless, it is well established that strategic choices made after less than complete investigation are reasonable only to the extent that reasonable professional judgments support the limitations on investigation, and a decision not to investigate must be directly assessed for reasonableness in all the circumstances. *Id.*

Defense counsel's failure to conduct an investigation of mitigating circumstances meant that Wertz's purported waiver of a mitigation investigation was not made knowingly and voluntarily. Though not addressed by the majority, the State argues that Wertz made a decision to forego mitigating evidence. This is the first case in which this court has been asked whether

24

a capital defendant can waive defense counsel's investigation of mitigation evidence. Wertz's

purported waiver is contained in the trial record:

> DEFENSE COUNSEL: Judge, there are two things I want to put on the record. The first one is that early on into this—my representation of Mr. Wertz he instructed me not to conduct a mitigation investigation. And I don't think it's necessary that I go on record as to the reasons why.
> THE COURT: It's up to him.
> DEFENSE COUNSEL: He instructed me not to go into any mitigating events anyway but there—as opposed to an investigation which—that encompasses the whole different matter and the other thing, Your Honor is that Mr. Wertz, both at the guilt phase and now at the penalty phase has decided not to take the witness stand.
> THE COURT: Is that correct?
> DEFENDANT: Sir, what?
> THE COURT: Is that correct?
> DEFENDANT: Yes.

The colloquy among defense counsel, the court, and Wertz is a discussion of two

distinct subjects: Wertz's decision not to conduct a mitigation investigation and Wertz's

decision to not take the witness stand. It is evident from this exchange that the court, in asking

whether defense counsel was correct, was asking whether Wertz had decided not to take the

stand, and Wertz affirmed that this was correct. Wertz's response was decidedly not a waiver

of a mitigation investigation. Thus, the manner in which this exchange was conducted renders

it impossible to ascertain the wishes of Wertz about how to conduct the sentencing phase of

his trial; the existence of a waiver of mitigation by Wertz is far from clear. This on-the-record

exchange is wholly insufficient for a finding that Wertz waived a mitigation investigation or

defense.

Defense counsel testified that Wertz directed him to conduct no mitigation defense.

Wertz denied that allegation. The assertion by defense counsel that Wertz did not desire a

mitigation defense is suspect given the conduct of Mrs. Wertz, who met with defense counsel and another attorney and discussed mitigation issues and a fee of $35,000. A short time thereafter, Mrs. Wertz forwarded payment in the amount of $35,000. Her other payments were in the amounts of $10,000, $15,000, $10,000, and $5,000, respectively. The $35,000 payment following the meeting starkly contradicts defense counsel's assertion. The assertion that Wertz did not desire a mitigation defense is further clouded by the fact that defense counsel did, in fact, put on some very limited evidence in mitigation with no objection from Wertz.

A capital defendant may use his own judgment to his detriment and thwart his counsel's efforts to investigate or present mitigation issues. *Singleton v. Lockhart*, 962 F.2d 1315, 1322 (8th Cir. 1992). However, defense counsel and the court must take steps to ensure that this is a knowing and voluntary waiver of an important right. *Id*. It is essential that defense counsel and the court ensure that the decision of the defendant to not investigate or present mitigation issues is a knowing and voluntary waiver. This showing of a knowing and voluntary waiver is absent from both the trial record and the Rule 37 hearing. The failure by counsel to clearly enunciate on the record the fact that Wertz prevented or limited an investigation into potential mitigation evidence and limited any use of mitigation evidence at the sentencing phase of the trial violates the due-process rights of Wertz. Similarly, the failure of the trial court to ensure that the defendant did intend to prevent or limit counsel's investigation or use of mitigating evidence is a violation of due process.

In *Schriro v. Landrigan*, 550 U.S. 465 (2007), the United States Supreme Court pointed

out they had not previously found an "informed and knowing" requirement in the decision to not offer evidence. But in Landrigan's habeas petition, the question was not whether an "informed and knowing" requirement should be imposed, but whether the state court was reasonable in finding that existing federal law did not require such requirement at the time of his postconviction hearing. The *Landrigan* Court also noted that if there were such a requirement, it would not be in issue for that defendant. It is clear from a review of the transcript that Landrigan, did not want to offer mitigation evidence. The questions by counsel and the court were unequivocal. That is not the case with Wertz.

There must be some standard established in this court as to how a circuit court should accommodate a defendant who wishes to waive all or part of a mitigation defense or investigation. The United States Supreme Court has recognized that "the penalty of death is qualitatively different from a sentence of imprisonment, however long." *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). This qualitative difference "calls for a greater degree of reliability when the death sentence is imposed." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). Justice O'Connor stated in a concurring opinion that "extraordinary measures" should be followed to ensure due process in a capital case. *See Eddings v. Oklahoma*, 455 U.S. 104, 118 (1982). The determination of whether a capital defendant has made a knowing and voluntary waiver of a mitigation investigation or defense must be viewed in light of this heightened standard of review.

Several courts have opined on whether a defendant may waive the investigation into mitigating evidence. *See State v. Johnson*, 401 S.W.3d 1,15 n.8 (Tenn. 2013) (collecting cases).

27

SLIP OPINION

The Tennessee Supreme Court, in *Zagorski v. State*, 983 S.W.2d 654, 660 (Tenn. 1998), established a three-prong process for situations in which a defendant wishes to forego mitigation in a capital trial. Defense counsel must inform the court outside the presence of the jury of this decision by the defendant. To protect the defendant's interests, and to preserve a complete record, the trial court must (1) inform the defendant of his right to present mitigating evidence and make a determination on the record whether the defendant understands this right and the importance of presenting mitigating evidence in both the guilt phase and the sentencing phase of trial; (2) inquire of both the defendant and counsel whether they have discussed the importance of mitigating evidence, the risks of foregoing the use of such evidence, and the possibility that such evidence could be used to offset aggravating circumstances; (3) after being assured that the defendant understands the importance of mitigation, inquire of the defendant whether he or she desires to forego the presentation of mitigating evidence. This procedure will ensure that the accused has intelligently and voluntarily made a decision to forego mitigating evidence.

Alabama has adopted the *Zagorski* procedure for waiver of mitigation. *Whitehead v. State*, 955 So. 2d 448, 454 (Ala. Crim. App. 2006). The Utah Supreme Court has held that a defendant may waive mitigation and affirmed such a waiver following a "lengthy and searching inquiry" into whether the defendant was aware of the nature and purposes of mitigation evidence and whether defendant was making a knowing and voluntary waiver. *State v. Maestas*, 299 P.3d 892, 961 (2012).

The petitioner appears to seek a bright-line rule that a capital defendant cannot waive

28

a mitigation investigation for the reason that a defendant cannot make a knowing and informed decision without a full and complete investigation of all possible facts and circumstances that could be considered as mitigating to a juror. A New Jersey court has held that a capital defendant cannot waive mitigation, and defense counsel may present mitigation evidence over the objection of the defendant. *See State v. Hightower*, 518 A.2d 482 (N.J. 1986). This position is contrary to the basic principle that the defense belongs to the defendant. "The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law." *Illinois v. Allen*, 397 U.S. 337, 350-51 (Brennan, J., concurring). A defendant in a capital case may knowingly and voluntarily waive the investigation of possibly mitigating circumstances and may waive or limit the presentation of possibly mitigating circumstances to a jury.

In sum, Wertz's counsel was ineffective for failing to conduct an investigation into mitigating evidence or presenting sufficient evidence of a knowing and voluntary waiver of mitigation so that it can be said that Wertz knowingly and voluntarily waived his right to present mitigating evidence. As demonstrated by the evidence adduced at the Rule 37 hearing, defense counsel failed to present easily obtained mitigating evidence. Further, Arkansas does not currently have a protocol or procedure for determining the voluntariness of a defendant's waiver of mitigation. This court should require that any waiver of investigation or presentation

of mitigating circumstances in a capital trial be a knowing and voluntary waiver. To ensure a valid waiver a trial court should make an inquiry on the record as to whether the defendant understands the nature and purposes of mitigation evidence. The trial court should further make inquiry to ascertain whether the defendant knowingly and intelligently makes any waiver of an investigation or presentation of evidence related to mitigating evidence. The court should then make specific findings on the record as to whether any waiver by the defendant is knowing and voluntary.

HART, J., joins in this concurrence in part and dissent in part.

*Taylor Law Partners, LLP*, by: *W.H. Taylor*, *William B. Putman*, and *Jeff Mitchell*, for appellant.
*Dustin McDaniel*, Att'y Gen., by: *Ashley Argo Priest* and *Rebecca Bailey Kane*, Ass't Att'y Gen., for appellee.